No. 01-898

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 88

STATE OF MONTANA,

        Plaintiff and Respondent,

    v.

SHAWN HIGHPINE,

        Defendant and Appellant.

APPEAL FROM:     District Court of the Eighth Judicial District,
In and for the County of Cascade, Cause No. BDC-95-132[c]
The Honorable Kenneth R. Neill, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

        William F. Hooks, Helena, Montana

        For Respondent:

        Mike McGrath, Montana Attorney General, Micheal S. Wellenstein, Assistant
Montana Attorney General, Helena, Montana; Brant Light, Cascade County
Attorney, Great Falls, Montana

Submitted on Briefs: August 15, 2002

Decided: April 21, 2003

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Appellant Shawn Highpine (Highpine) appeals a jury verdict issued in the Eighth Judicial District Court, Cascade County, convicting him of aggravated burglary. We affirm.

¶2 We address the following issue on appeal: Was there sufficient evidence to support Highpine's conviction for aggravated burglary?

## I. FACTUAL AND PROCEDURAL BACKGROUND

¶3 This is the third time this case has been before this Court. Our opinion issued in *State v. Highpine*, 2000 MT 368, 303 Mont. 422, 15 P.3d 938, details the previous two appearances, so we will not repeat the procedural history as discussed therein. However, the instant appeal follows Highpine's jury conviction upon retrial and disputes the sufficiency of the evidence. As our previous opinion does not address the facts of the crimes for which Highpine was eventually convicted, we now must address the facts underlying these crimes.

¶4 Prior to the events at issue, Highpine became involved in a relationship with a woman named Stacy Azure (Azure). Due to serious discord in their relationship, a local court issued a no contact order which prohibited Highpine from contacting Azure including visiting Azure's apartment. However, Azure and Highpine nonetheless continued to have intimate relations despite the order. As a result of their relations, Azure became pregnant during the time period just prior to the events at issue. Further, Azure apparently tried to have the no contact order lifted but was unsuccessful.

¶5 On March 19, 1995, Highpine spent the night at Azure's apartment and the two engaged in sexual intercourse. However, the next day, on March 20, Highpine left the

2

apartment around midday. Later that day, Highpine returned to the apartment when Azure's cousin, Ted Courchane (Courchane) was present. Highpine and Azure had a disagreement, and Courchane overheard part of their conversation. Highpine then left again after about ten minutes. Eventually, Azure also left her apartment with Courchane and another cousin, Chad Daniels (Daniels), intending to celebrate Daniels' birthday. Azure took the only key to the apartment and gave it to Courchane. She asked him to watch the apartment as she was going out of town with her mother.

¶6 Later that evening while Azure was away, Highpine lured an eleven year old boy to accompany him to the apartment. After arriving at the door of the apartment and discovering the door locked, Highpine broke a window in the door with a rock. Highpine then entered taking the boy with him. When inside, Highpine eventually anally then orally raped the boy.

¶7 After celebrating Daniels' birthday, Azure and Courchane returned to the apartment and discovered police investigating the crime. As Azure believed she had an outstanding warrant for her arrest, she and Courchane immediately left. However, Courchane returned to find out what was going on. Upon police request, Courchane consented to a search of Azure's apartment. As part of its evidence, the State took a picture of Highpine from the refrigerator and took two pairs of pants out of a suitcase in the apartment that were apparently Highpine's. The State also found an envelope and letter addressed to Azure from Highpine which listed Azure as the addressee at her apartment address and Highpine as the sender at the same return address.

¶8 Based on its investigation, the State charged Highpine with sexual intercourse without consent, aggravated kidnaping, and aggravated burglary. At trial, in addition to other witnesses, Azure, Courchane, and Highpine testified regarding the discussion between Azure and Highpine on March 20 before Highpine left the apartment. Azure testified that she would have welcomed Highpine back that evening, but that it was possible she told him to leave. In contrast, Courchane testified that Azure said to Highpine something along the lines, "I think you should leave. You shouldn't be here." Highpine testified that he did not speak to Azure at all about whether or not he could be in the apartment.

¶9 After close of the evidence, the jury convicted Highpine on all three counts. Highpine was sentenced to 100 years on the first two crimes and 15 years on the third crime of aggravated burglary. He was also denied parole for 40 years and was classified as a persistent felony offender.

¶10 Highpine now appeals the aggravated burglary conviction on the grounds that there was insufficient evidence to prove he knowingly entered or remained unlawfully in Azure's apartment. Further facts relevant to this issue are discussed below.

## II. STANDARD OF REVIEW

¶11 It is well settled that the State must prove each element of an offense beyond a reasonable doubt. *State v. Hegg*, 1998 MT 100, ¶ 13, 288 Mont. 254, ¶ 13, 956 P.2d 754, ¶ 13. We review a question on the sufficiency of the evidence to determine whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v.*

4

*Gladue*, 1999 MT 1, ¶ 34, 293 Mont. 1, ¶ 34, 972 P.2d 827, ¶ 34.  Further, "[w]e review the jury's verdict only to determine whether it is supported by sufficient evidence, not to determine whether there was evidence to support a different verdict." *State v. Johnson*, 1998 MT 289, ¶ 41, 291 Mont. 501, ¶ 41, 969 P.2d 925, ¶ 41 (citation omitted).

### III. DISCUSSION

¶12 **Was there sufficient evidence to support Highpine's conviction for aggravated burglary?**

¶13 The jury in this case found Highpine guilty of aggravated burglary under § 45-6-204, MCA.  Section 45-6-204, MCA, sets out the elements of aggravated burglary and states in pertinent part:

> (2)  A person commits the offense of aggravated burglary if he knowingly **enters or remains unlawfully** in an occupied structure with the purpose to commit an offense therein and:
> . . . .
> (b)  in effecting entry or in the course of committing the offense or in immediate flight thereafter, he purposely, knowingly, or negligently inflicts or attempts to inflict bodily injury upon anyone.  [Emphasis added].

The essential element of aggravated burglary at issue in this case is whether Highpine entered or remained unlawfully in Azure's apartment.  Section 45-6-201(1), MCA, defines "enters or remains unlawfully" for purposes of § 45-6-204, MCA, as follows:  "A person enters or remains unlawfully in or upon any vehicle, occupied structure, or premises when he is not licensed, invited, or otherwise privileged to do so."  Therefore, we must determine whether sufficient evidence, viewed in a light most favorable to the State, supports the jury's determination that Highpine was not licensed, invited, or otherwise privileged to enter

5

Azure's apartment.

¶14 Highpine argues that there was insufficient evidence to support this element. First, Highpine notes that he and Azure had an ongoing relationship despite the no contact order and also notes that Azure was pregnant with his child. He also calls this Court's attention to the fact that he commonly spent the night at Azure's apartment and that he maintained a suitcase there.

¶15 In addition, Highpine points to conflicting testimony at trial which focuses on whether Azure consented to Highpine's presence in the apartment on March 20. Specifically, Highpine asserts that this testimony demonstrates Azure did not withdraw her consent to his presence even though they had an argument that day because at one point she testified that he would have been welcome to return to the apartment that night. Given the status of their relationship and the fact that he frequently spent the night at the apartment, Highpine argues that Azure's testimony established that he had permission to enter the apartment.

¶16 In contrast, the State asserts that there was sufficient evidence for the jury to find Highpine unlawfully entered the apartment. First, the State notes that Highpine and Azure were both aware of the no contact order and its provision barring Highpine from Azure's residence. The State further asserts that by virtue of the order, Highpine knew his entrance was unlawful. Next, the State points out that Azure had the only key to the apartment, that she locked the apartment, and that she gave the key not to Highpine, but to Courchane in order for him to watch the apartment while she was out of town. Consequently, the State argues the jury could have determined Highpine was not privileged to enter the apartment

6

because Azure did not want him to be there while she was gone.

¶17 In addition, the State notes that the victim testified Highpine broke a window in order to gain entrance. Finally, the State asserts that it was up to the jury to weigh the conflict in the evidence regarding the March 20 conversation between Azure and Highpine as relayed by the testimony. Based on this evidence, the State argues that there was sufficient evidence for the jury to properly find that Highpine did not have permission to enter the apartment and therefore, entered unlawfully.

¶18 After reviewing the evidence, we agree with the State. Highpine correctly argues that the State has the burden to prove each element of the offense of aggravated burglary beyond a reasonable doubt, including the required element that Highpine unlawfully entered Azure's apartment. However, resolutions of conflicts in the evidence, the credibility of witnesses and the weight to be accorded evidence are within the province of the jury. *Gladue*, ¶ 40; *State v. Ahmed* (1996), 278 Mont. 200, 212, 924 P.2d 679, 686. Further, as mentioned, in reviewing a claim for insufficient evidence, we review the jury's verdict only in order to determine whether it is supported by sufficient evidence, not to see whether evidence supports a different verdict. *Johnson*, ¶ 41.

¶19 In this case, the jury was presented with conflicting evidence as discussed above and determined that Highpine's entry was unlawful. Our review of the evidence indicates this verdict is supported by sufficient evidence because any rational trier of fact could have found Highpine unlawfully entered Azure's apartment beyond a reasonable doubt. First, regarding the no contact order, it is undisputed that Highpine was aware of the order and its

7

requirements. For example, during his testimony when asked why he left the apartment, Highpine himself stated, "I wasn't supposed to be there." Consequently, Highpine knew that even if he had permission from Azure to enter the apartment, his entry was nonetheless unlawful because it was in violation of a court no contact order.

¶20 Further, even though Azure stated that Highpine would have been welcome to return, she did not give him the only key to the apartment, she locked the door, and she did not ask him to watch the apartment while she was to be out of town. The jury was entitled to weigh the conflict between Azure's statements and her actions to decide the relative bearing on whether Highpine was invited to return to the apartment in her absence. Further, the jury was also entitled to consider the conflicts between the testimony of Azure, Courchane, and Highpine regarding whether Highpine could return. Apparently the jury believed Highpine was not privileged to enter the apartment, despite Azure's testimony indicating she would have consented to his return, because Azure did not give Highpine the key when she planned to be out of town.

¶21 Finally, the jury could also have decided that Highpine's entry was unlawful based on the fact that he broke a window in order to gain entry. Therefore, despite the facts cited by Highpine, the evidence cited by the State is sufficient to support the jury's determination that Highpine entered Azure's apartment unlawfully.

¶22 We note in making this holding that it is in line with previous cases in which we have reviewed conflicting evidence for sufficiency regarding a finding of unlawful entry. For example, in a similar situation in *Gladue*, the defendant and victim were also in an ongoing

8

relationship, but the jury determined the defendant was not privileged to enter the victim's home at the specific time at issue even though he had a key. Based on the victim's testimony that the defendant did not have her permission to enter the apartment, we upheld the jury's finding that the entry was unlawful. *Gladue*, ¶¶ 36-42. *See also State v. Manthie* (1982), 197 Mont. 56, 59-60, 641 P.2d 454, 456 (defendant entered unlawfully because he was not invited to return to trailer after the first visit); *State v. Courville* (1989), 236 Mont. 253, 258, 769 P.2d 44, 48 (an entry that "exceeds any reasonable privilege" is unlawful).

¶23    Therefore, we hold that there was substantial evidence upon which any rational trier of fact could have found that Highpine knowingly and unlawfully entered Azure's apartment. Accordingly, Highpine's conviction for aggravated burglary will stand.

## IV. CONCLUSION

¶24    Because the jury verdict was based on sufficient evidence, we affirm.


/S/ JAMES C. NELSON



We Concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ TERRY N. TRIEWEILER
/S/ JIM RICE


9