No. 04-529

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 181

STATE OF MONTANA,

        Plaintiff and Respondent,

   v.

ROBERT L. FIELD,

        Defendant and Appellant.

APPEAL FROM:    The District Court of the Twelfth Judicial District,
In and For the County of Hill, Cause No. DC 2002-105
Honorable John C. McKeon, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        Antonia P. Marra, Marra, Sexe, Evenson & Bell, Great Falls, Montana

        For Respondent:

        Honorable Mike McGrath, Attorney General; Mark W. Mattioli,
Assistant Attorney General, Helena

        Cyndee L. Peterson, County Attorney, Havre, Montana

Submitted on Briefs:  May 31, 2005

Decided:  July 20, 2005

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1      A jury convicted Robert Field of theft by deception by common scheme.  Field filed a motion for a new trial, which the District Court denied.  Field now appeals his conviction, and we affirm.

¶2      We address the following issues on appeal:

¶3      1. Whether a rational trier of fact could conclude beyond a reasonable doubt that Field committed theft by deception.

¶4      2. Whether the State committed a *Brady* violation by withholding financial documents.

¶5      3. Whether the District Court abused its discretion in denying various jury instructions proposed by Field.

¶6      4. Whether the District Court impermissibly imposed restitution without the jury having first found the amount of restitution.

## FACTUAL AND PROCEDURAL BACKGROUND

¶7      Field managed the TownHouse Inn in Havre, Montana.  Field was responsible for the daily bank deposits and managed the incoming mail.  He also was responsible for the direct-bill accounts.  These accounts were for the hotel's most frequent clients.  Periodically, the hotel would bill one of these clients for prior use of hotel facilities, and the client would mail a check back.

¶8      Another hotel policy relevant to this appeal is that, if a hotel guest was not satisfied with a room, he or she could ask to be reimbursed.  If the guest had paid in cash, an

employee would enter the reversal of the charges into the hotel's computer and pay the guest the original amount in cash. An employee would accomplish this by accessing a computer program using a password. Employees, such as Field, did not know each others' passwords.

¶9 In May 2002 an employee of the hotel noticed that Field had reversed several guests' room payments in the middle of the night. The central office in Butte became concerned and a director drove up to Havre to confront Field. Field admitted that he had taken some money, but that it was to reimburse himself for hotel purchases. Company policy allowed Field to directly reimburse himself for purchases of $100 or less, but the amount missing far exceeded $100. Therefore, TownHouse Inn suspended, and later terminated, Field.

¶10 An investigation of the branch's accounts revealed that Field had engaged in highly irregular accounting practices. In particular, the investigation revealed that Field had altered numerous bank deposit slips from mid-June 2001 until May 2002. For each deposit the white copy (the supposed original) would be deposited with the bank, and the yellow copy (the carbon copy of the original) would be forwarded to headquarters in Butte. The yellow copy was filled-out with handwriting that was not Field's, whereas the white copy was in Field's handwriting. Each yellow copy itemized a certain amount of cash and checks with a total deposit. Each white copy had exactly the same *total*, but a new check was entered on the form and the cash was decreased by the same amount. This "replacement check(s)" was always from a direct-bill customer intended to pay-off a direct-bill account. The total amount of cash substituted through this method totaled $17,632.67. The missing amount in cash deposits was not reimbursed at a later time. When the hotel later audited the direct-bill

3

accounts, it discovered that many direct-bill customers had not been credited with checks they had sent in. Therefore, TownHouse Inn had to write-off approximately $6,200. In addition, another write-off of direct-bill accounts totaled over $13,000.

¶11 In the course of investigating the crime, the police department obtained certain financial documents from the hotel relating to the direct-bill accounts. The police did not find the documents to be useful in their investigation and therefore returned them to the hotel. After the trial concluded, Field requested these documents from the prosecution. The prosecution rightfully replied that it did not have possession of the documents.

¶12 The investigation also led to authorities contacting several guests whom Field listed as recipients of reverse-charge refunds. Some of these guests later testified. All of them stated that they had been satisfied with their stay at the hotel, that they had not asked for their money back, and that they had never received any money back.

¶13 At trial, after the prosecution rested, Field moved for a directed verdict, and the court denied the motion. The jury later found that Field had committed theft by deception, that the crime was by common scheme, and that the theft was greater than $1,000.

¶14 Field argues that the evidence was not sufficient for the jury to find him guilty beyond a reasonable doubt, that the prosecution committed a *Brady* violation in not providing him with some of the hotel's financial documents, that the court improperly refused some of his proposed jury instructions, and that the amount of restitution ordered by the court should have been determined by the jury.

**STANDARD OF REVIEW**

¶15 "We review a question on the sufficiency of the evidence to determine whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. York*, 2003 MT 349, ¶ 10, 318 Mont. 511, ¶ 10, 81 P.3d 1277, ¶ 10 (citing *State v. Highpine*, 2003 MT 88, ¶ 11, 315 Mont. 129, ¶ 11, 68 P.3d 669, ¶ 11). We review a jury's verdict to determine whether sufficient evidence exists to support the verdict, not whether the evidence could have supported a different result. *York*, ¶ 10 (citing *State v. Sattler*, 1998 MT 57, ¶ 60, 288 Mont. 79, ¶ 60, 956 P.2d 54, ¶ 60).

¶16 We review a district court's discovery ruling for whether the court abused its discretion. *Hawkins v. Harney*, 2003 MT 58, ¶ 17, 314 Mont. 384, ¶ 17, 66 P.3d 305, ¶ 17. The same standard applies for a district court's jury instructions, as well as whether the instructions "as a whole, fully and fairly instruct the jury on the applicable law." *State v. Cameron*, 2005 MT 32, ¶ 13, 326 Mont. 51, ¶ 13, 106 P.3d 1189, ¶ 13 (citing *State v. Bowman*, 2004 MT 119, ¶ 49, 321 Mont. 176, ¶ 49, 89 P.3d 986, ¶ 49).

**DISCUSSION**

**ISSUE ONE**

¶17 *Whether a rational trier of fact could conclude beyond a reasonable doubt that Field committed theft by deception.*

¶18 Field makes various arguments for why a rational trier of fact could not have found him guilty beyond a reasonable doubt. None of the arguments is persuasive. Field points

5

out that no one saw Field take any money. That is true. However, that does not end the story as there was other evidence to support the jury's verdict. "A criminal conviction may be based entirely on circumstantial evidence." *State v. Vukasin*, 2003 MT 230, ¶ 20, 317 Mont. 204, ¶ 20, 75 P.3d 1284, ¶ 20.

¶19 At trial, and now on appeal, Field offered no explanation for why bank deposit slips were altered in his hand. Since the deposit amounts were the same, Field argues that the jury could not infer theft from the alterations. Of course, this ignores the substitution of direct-bill checks and the corresponding loss of cash. Field is correct in stating that the prosecution did not match specific direct-bill checks with unpaid balances in direct-bill accounts. However, the prosecution did submit evidence that the hotel suffered thousands of dollars in losses because direct-bill accounts were not paid. Also, charges were reversed on hotel guests who never complained about their rooms and never received any money back, the reversals were made by someone using Field's password, and there was no evidence that anyone other than Field knew that password.

¶20 Viewing this evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact could have concluded beyond a reasonable doubt that Field committed theft by deception by common scheme, and that the theft was greater than $1,000.

**ISSUE TWO**

¶21 *Whether the State committed a* Brady *violation by withholding financial documents.*

¶22 Field contends that the District Court wrongly denied his motion for a new trial because it should have concluded that the State committed a *Brady* violation. Under *Brady*

6

*v. Maryland* (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, the State must turn evidence over to the defense that is material to guilt or punishment. *See State v. Craig* (1976), 169 Mont. 150, 153, 545 P.2d 649, 651. Field contends that the State should have turned over some of the hotel's financial documents to him in discovery. In this case, the police briefly possessed some of these financial documents, but turned the documents back to the hotel because they did not think them material to the case. The prosecutor was not even aware of these documents until Field requested them after trial. There is no evidence that Field sought to obtain these documents directly from the hotel. Because there is no indication that the State, while in possession of the documents, failed to honor a request to produce them, we conclude that the District Court did not abuse its discretion in denying Field's motion for a new trial. We agree with the District Court that Field's failure to procure the documents before trial was a tactical maneuver and not the result of a constitutional violation.

### ISSUE THREE

¶23 *Whether the District Court abused its discretion in denying various jury instructions proposed by Field.*

¶24 Field contends that the Court wrongly rejected three of his proposed jury instructions. First, although the Court accepted his instruction setting forth the elements of the crime of theft by deception, the Court struck the element requiring the theft to exceed $1,000. However, contrary to Field's characterization of the court's instructions, the court, in a separate instruction, did ask the jury to find whether the theft exceeded $1,000. Therefore,

7

reading the instructions as a whole, we conclude that the court's alteration of Field's proposed instruction did not prejudice his defense.

¶25 Field next argues that the court should have submitted his proposed instruction regarding agency. The proposed instruction states that "[a]n agent has such authority as the principal actually or ostensibly confers upon him." Evidence was submitted at trial illustrating that Field had taken home certain items, including bookkeeping materials and money from the hotel's safe. Since the items were returned to the hotel, Field contends that the "agency" instruction was needed to inform the jury that he had the authority to take these actions. Whatever the merits of this explanation, agency had nothing to do with Field's permanently depriving the hotel of its property through his other actions. The court did not abuse its discretion in refusing this instruction.

¶26 Finally, Field claims that the court erred in refusing an instruction stating that, since money is fungible, checks should be valued the same as cash. This, argues Field, would have supported his theory that no theft occurred because when he substituted checks for cash the amount of money deposited remained the same. The court did not abuse its discretion in refusing this instruction because the fungibility of checks and cash is irrelevant to the fact that Field deprived TownHouse Inn of its cash irrespective of the presence of checks.

## ISSUE FOUR

¶27 *Whether the District Court impermissibly imposed restitution without the jury having first found the amount of restitution.*

¶28    *Apprendi v. New Jersey* (2000), 530 U.S. 466, 490, 120 S.Ct. 2348, 2362-63, 147 L.Ed.2d 435, 455, confirmed the following rule: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." As stated above in Issue Three, Field is incorrect in arguing that the court did not follow this rule in his case. The court properly submitted to the jury the question of whether the theft exceeded $1,000. Once the jury made that finding, the court was at liberty to sentence Field to a maxium of ten years in prison and a $50,000 fine. Section 45-6-301(8)(b), MCA (2001).

¶29    Field further argues that the amount the court imposed as restitution, $17,632.67, was not an amount found by the jury, and that therefore he should not have been ordered to pay restitution in that sum. This argument also fails. The rule of *Apprendi* does not apply to restitution. We agree with the Seventh Circuit's conclusion that restitution "is not a criminal punishment but instead is a civil remedy administered for convenience by courts that have entered criminal convictions, so the Sixth Amendment does not apply." *United States v. George* (7th Cir. 2005), 403 F.3d 470, 473 (citations omitted). We therefore conclude that the court did not err in ordering Field to pay $17,632.67 in restitution.

## CONCLUSION

¶30    We affirm the judgment of the District Court.

/S/ W. WILLIAM LEAPHART

We Concur:

9

/S/ PATRICIA O. COTTER
/S/ JAMES C. NELSON
/S/ JIM RICE
/S/ BRIAN MORRIS