No. 99-276

# IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 117

STATE OF MONTANA,

Plaintiff/Respondent,

v.

ROBERT LEE CRAWFORD,

Defendant/Appellant.

APPEAL FROM: District Court of the Fourth Judicial District,
In and For the County of Missoula,
The Honorable John W. Larson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Chad Wright, Appellate Defender, Helena, Montana

For Respondent:

Mike McGrath, Montana Attorney General; Pamela D. Bucy,
Assistant Attorney General, Helena, Montana

Fred Van Valkenburg, Missoula County Attorney, Missoula, Montana

Submitted on Briefs:  December 6, 2001

Decided:  June 6, 2002

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1      Robert Lee Crawford (Crawford) was charged in the Fourth Judicial District Court with three felonies, including Count III, Criminal Possession of Property Subject to Forfeiture, the property having an approximate amount of $1025. The case proceeded to trial, and during jury deliberations the jury asked the District Court to clarify the jury instruction concerning Count III. The court instructed the jury that it could convict Crawford on that count even if it found only a portion of the $1025 came from the sale of dangerous drugs. The jury convicted Crawford on all three counts and in a special interrogatory, concluded that only $225 of the $1025 was subject to forfeiture. Crawford appeals his conviction on Count III, property subject to forfeiture. We reverse.

¶2      The dispositive issue on appeal is:

    Whether the District Court abused its discretion when it submitted a supplemental jury instruction that allowed the jury to find that only a portion of the alleged property subject to forfeiture was proceeds from the sale of dangerous drugs.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3      Crawford's arrest stemmed from an alleged sale of methamphetamine to Beverly New (New), who was arrested for shoplifting on July 9, 1998.  Following New's arrest, officers found methamphetamine while searching her purse. New informed the officers that she purchased the methamphetamine from Crawford earlier that day. The next day, New met with Detective Sergeant Larry Jacobs (Detective Jacobs) from the Missoula County Sheriff's Department about setting up another drug purchase with Crawford. New agreed and placed a call to Crawford, making arrangements to purchase

methamphetamine from him at a gas station in East Missoula that afternoon. Detective Jacobs recorded the phone conversation between New and Crawford.

¶4 Detective Jacobs and three other law enforcement officers went to the gas station to intercept Crawford. When Crawford arrived the officers attempted to block Crawford's vehicle, but Crawford managed to drive away. Following a brief pursuit, Crawford abandoned the vehicle and continued to flee on foot. Later that day, Crawford was caught riding as a passenger in another vehicle and he was arrested.

¶5 When Detective Jacobs searched Crawford incident to his arrest, he discovered $1025 in cash inside Crawford's front pants pocket. Crawford told the detective that the money was from a roofing job and other spot jobs. Detective Jacobs testified that since Crawford failed to provide him with any names of employers, he was unable to verify Crawford's explanation of the source of the cash. In addition, when the detectives searched the vehicle abandoned by Crawford, they found a ziploc baggie containing methamphetamine residue.

¶6 On July 31, 1998, Crawford was charged by Information with the following felony offenses: Count I, Criminal Sale of Dangerous Drugs; Count II, Criminal Possession of Dangerous Drugs; and Count III, Criminal Possession of Property Subject to Forfeiture. On Count III, the Information alleged that "[o]n or about July 9, 1998, [Crawford] knowingly possessed property, approximately $1,025.00 that is subject to criminal forfeiture as proceeds from the exchange of dangerous drugs." Crawford entered pleas of not guilty to all three counts and the matter proceeded to trial on December 8, 1998.

¶7     At trial, New told the jury she called Crawford early in the morning on July 9, 1998, asking him to sell her some methamphetamine. New testified she met Crawford on her way to work, paying him $225, probably in twenty and ten dollar denominations, for three and one-half grams of methamphetamine packaged in a ziploc baggie. New provided an ATM receipt showing a $230 cash withdrawal on July 9, 1998, at 5:37 a.m.

¶8     Crawford called only one witness in his defense, Diane Dupras (Dupras). Dupras testified that a couple of days before Crawford's arrest, she gave Crawford $100 to purchase a car battery, and that on the day of his arrest, July 10, 1998, she paid Crawford $800 to complete some body repair work on her car. A copy of a withdrawal slip from Dupras' bank account indicated $800 in cash was withdrawn from her account on July 6, 1998.

¶9     On cross-examination, Dupras testified that she assumed the bank gave her large bills, fifties and/or one-hundreds, noting that is what they usually do. The State questioned Dupras about the date she allegedly gave Crawford the $800, noting that in her written statement she indicated that she gave him the $100 on July 8, 1998, and the $800 on July 6, 1998, not the day Crawford was arrested. The State also asked Dupras if her son did body work on cars and Dupras explained that her son was a mechanic, but that he did not do body work.

¶10     After the defense rested, the State called Missoula County Sheriff Detective Tom Lewis (Detective Lewis) as a rebuttal witness. Detective Lewis testified that he observed Dupras' son doing some body work on a car during the summer of 1998.

4

¶11 At the close of the defendant's case, but prior to Detective Lewis' testimony, the parties finalized the jury instructions. The State did not move to make any alterations to the instructions. Later, after the jury received the instructions and began deliberating, it sent a note to the District Court concerning Count III, asking if it could find that only a portion of the $1025 came from the sale of drugs.

¶12 After hearing arguments from both parties, the District Court concluded that the jury did not have to find the entire $1025 was from the sale of drugs. The court proposed an interrogatory, allowing the jury to allocate the dollar amount it determined was from the sale of drugs, if it first found the other elements set out in Count III were established beyond a reasonable doubt. Crawford's objection to the special interrogatory was overruled, and the court gave the supplemental instruction to the jury. Sometime later, the jury returned a verdict, finding Crawford guilty on all three counts. In response to the special interrogatory the jury found Crawford possessed $225 from the sale of dangerous drugs.

¶13 On January 29, 1999, the District Court sentenced Crawford to the Department of Corrections for a term of five years on Count I, to the Montana State Prison (MSP) for five years on Count II, and to MSP for ten years on Count III. The court suspended all but 204 days on each of the sentences, and ordered all three sentences to run concurrently. The court further ordered that the property subject to forfeiture ($225), be disposed of in accordance with State law, and that of the remaining $800, $400 would be credited against Crawford's fine and $400 would go to Dupras.

¶14 Crawford appeals his conviction on Count III, based on the District Court's supplementary instruction to the jury which allowed it to find a portion of the $1025 was proceeds of drug transactions. In his opening brief, Crawford also challenges his conviction on Count I, alleging the State failed to present sufficient evidence that he sold dangerous drugs. However, Crawford did not provide any argument on this issue, and accordingly, we conclude it has been abandoned.

## STANDARD OF REVIEW

¶15 The standard of review of jury instructions in criminal cases is whether the instructions, as a whole, fully and fairly instruct the jury on the law applicable to the case. *State v. Johnson*, 1998 MT 289, ¶ 28, 291 Mont. 501, ¶ 28, 969 P.2d 925, ¶ 28. Moreover, we review a district court's decision to provide the jury with requested information pursuant to § 46-16-503(2), MCA, for abuse of discretion. *State v. Brogan* (1995), 272 Mont. 156, 162-63, 900 P.2d 284, 288-89 (citing *State v. Hawkins* (1974), 165 Mont. 456, 460, 529 P.2d 1377, 1379) (when district court fully and correctly instructed the jury as to defendant's legal duties at issue, it did not abuse its discretion in refusing to further instruct the jury).

## DISCUSSION

¶16 **Did the District Court abuse its discretion when it submitted a supplemental jury instruction that allowed the jury to find that only a portion of the alleged property subject to forfeiture was proceeds from the sale of dangerous drugs?**

¶17 Both before the trial started and at the close of the evidence, the District Court instructed the jury on Count III by giving Instruction No. 5-11, which provided:

To convict the defendant of criminal possession of property subject to forfeiture, the State must prove the following elements:

1. That the defendant possessed property, approximately $1025.00;
2. That the property is proceeds from the exchange of dangerous drugs; and
3. That the defendant acted knowingly.

If you find from your consideration of the evidence that all of these elements have been proved beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of the evidence that any of these elements has not been proved beyond a reasonable doubt then you should find the defendant not guilty.

¶18    At some point during deliberations, the jury apparently became uncertain as to how Instruction No. 5-11 should be applied, as indicated by the following note sent to the District Court:

Count III. Do we have to find the entire $1025 was the result of sale of drugs, or can we find only a portion of that amount came from the sale?

After conferring with both parties, the District Court provided the following supplemental instruction to the jury:

In response to your note, I instruct you that you may find only a portion of the amount ($1,025.00) came from the sale of dangerous drugs and still convict the Defendant if you find all the elements are proven beyond a reasonable doubt.

The court also supplied the jury with a special interrogatory, which provided:

We the jury in the above entitled cause, having found the Defendant guilty of Count III, Criminal Possession of Property Subject to Forfeiture, find the sum of $_____ to be the amount of money possessed by the Defendant from the sale of dangerous drugs.

As part of its verdict, the jury entered the sum of $225 in the blank provided on the interrogatory.

7

¶19     After deliberations have begun, it is within the district court's discretion whether to provide information in response to a jury's inquiry. Section 46-16-503(2), MCA, provides in relevant part that:

> [a]fter the jury has retired for deliberation . . . if the jurors desire to be informed on any point of law arising in the cause, they shall notify the officer appointed to keep them together, who shall then notify the court. The information requested may be given, in the discretion of the court, after consultation with the parties.

A district court's decision to provide the jury with requested information pursuant to § 46-16-503(2), MCA, is reviewed for abuse of discretion. *Brogan*, 272 Mont. at 162-63, 900 P.2d at 288-89.

¶20     Crawford argues that it was error for the District Court to supplement the jury instructions, noting that Instruction No. 5-11 made the specific dollar amount alleged by the State ($1025) an element of Count III. Crawford contends that once given, that instruction became the law of the case and therefore the jury was bound to follow it as given. In the alternative, Crawford argues that the District Court's supplementary instruction, allowing the jury to find that only a portion of the $1025 was drug proceeds, effectively amended the information which had set out the figure as "approximately $1025," and argues that altering a substantive element of an information prejudiced Crawford because he could not adjust his defense strategy to rebut the State's reduced burden of proof.

¶21     In response, the State argues that because possession of any amount of proceeds from an illegal drug sale violated § 45-9-206, MCA, the amount identified in Count III is not an element of the crime, or even a material component of the charge or the

8

instruction, and thus the supplemental instruction did not amend the Information. The State contends the supplemental instruction given by the District Court was proper and that the jury's finding of a lessor amount of property subject to forfeiture did not cast reasonable doubt on the State's proof with respect to the actual elements of the offense.

¶22 The record is clear that the State not only charged Crawford with possession of the specific figure, $1025, in the Information, but it also prosecuted Crawford on this same figure, thus assuming the burden of proving that Crawford possessed the approximate amount of $1025 from proceeds of the sale of dangerous drugs. Moreover, the State underscored the amount as an element of the offense when in its opening comments, it asserted that at Crawford's arrest, "he had $1025 on his person, and it's the State's burden to show you that those proceeds were from the sale of dangerous drugs." The State then attempted to refute any alleged legitimate sources for any portion of the $1025, when it elicited testimony from Detective Jacobs concerning lack of verification of Crawford's roofing employer, attempted to discredit Dupras during cross-examination, and presented rebuttal witness testimony.

¶23 Although the State was clearly aware of Crawford's defense on Count III (i.e., there were other legitimate sources of $1025), in its closing argument, the State continued to assume the burden of demonstrating the entire $1025 was drug proceeds, telling the jury that "on Count III . . . we have to show that [Crawford] possessed property subject to forfeiture. That he had about $1025, and that it was subject to forfeiture, and that it is the proceeds from drug transactions." The State argued that various evidence, including the denominations of the bills, the credibility of Dupras, and the circumstances of the arrest

9

and New's testimony, showed beyond a reasonable doubt that the money was drug proceeds.

¶24   Significantly, at no time during the presentation of its case did the State offer evidence that perhaps only a portion of the $1025 was from the sale of drugs, nor did it ever accept such a possibility in its closing remarks, despite the fact that Crawford was clearly trying to establish other sources for some or all of the money.

¶25   Crawford cites *State v. Cline* (1976), 170 Mont. 520, 555 P.2d 724, for the proposition that under the law of the case doctrine, the State was bound to prove the elements of the crime as set out in the jury instructions. In *Cline*, three defendants were convicted of obtaining money by false pretenses, by filing a false claim for workmen's compensation death benefits. The State's proposed instruction, setting out the crime of obtaining money by false pretenses, included receipt of settlement proceeds as an element of the offense. At trial, the State failed to present any proof that two of the defendants received any part of the settlement proceeds. Although on appeal the State argued that receipt of the proceeds was unnecessary for a conviction, we concluded that the instruction "requiring such proof became the 'law of the case' and the jury was bound thereby." *Cline*, 170 Mont. at 527, 555 P.2d at 729 (citations to civil cases omitted). *See also*, *State v. Hickman* (Wash. 1998), 954 P.2d 900 (under Washington's law of the case doctrine, state assumes the burden of proving otherwise unnecessary elements of the offense when such added elements are included without objection in the "to convict" instructions to the jury).

10

¶26　More recently, we noted that "[i]n the civil context 'we have long adhered to the rule that an instruction given without an objection becomes the law of the case,' " concluding that "[t]here is no good reason why this same rule should not apply in the criminal context," when the State had opportunity to object to a proposed instruction, but failed to do so. *State v. Robbins*, 1998 MT 297, ¶ 30, 292 Mont. 23, ¶ 30, 971 P.2d 359, ¶ 30, overruled in part on other grounds in *State v. LaMere*, 2000 MT 45, 298 Mont. 358, 2 P.3d 204 (citing *DeBruycker v. Guaranty Nat. Ins. Co.* (1994), 266 Mont. 294, 301, 880 P.2d 819, 823). In *Robbins*, we held that the State's failure to object to the defendant's proposed negligent homicide instruction, although it had ample opportunity, rendered the instruction the law of the case. *Robbins*, ¶ 30.

¶27　We conclude the situation here is similar to that presented in *Cline* and *Hickman*, compelling a similar result. We hold that when the State fails to properly object to a jury instruction, the instruction, whether it includes an unnecessary element or not, becomes the law of the case once delivered, and the jury is accordingly bound by it. We therefore conclude that Instruction No. 5-11 became the law of the case and the jury was bound to follow it. Accordingly, we conclude that the District Court abused its discretion when it gave the supplemental instruction that allowed deviation from the original "to convict" instruction which had alleged the specific dollar figure of $1025.

¶28　We further conclude the State did not establish beyond a reasonable doubt that the $1025 possessed by Crawford was proceeds from the sale of drugs. The evidence did not sufficiently establish that even "approximately" $1025 was proceeds from the sale of

dangerous drugs, since the jury was convinced only $225 was attributable to drug sales, as evidenced by its answer to the special interrogatory.

¶29    Therefore, for a lack of proof of one of the elements of the offense as defined by Instruction No. 5-11, Crawford's conviction on Count III is reversed.


/S/ PATRICIA COTTER


We Concur:
/S/ KARLA M. GRAY
/S/ JIM RICE
/S/ W. WILLIAM LEAPHART


Justice Jim Regnier dissents.

¶30    The majority concludes that Instruction No. 5-11 became the law of the case and the jury was bound to follow it. Thus, the District Court abused its discretion when it gave a supplemental instruction that allowed deviation from the original "to convict" instruction which had alleged the specific dollar figure of $1025. Under this analysis, the Court then concludes that the State did not establish beyond a reasonable doubt that the $1025 possessed by Crawford was proceeds from the sale of drugs.

¶31    The problem I have with this analysis is that Crawford was charged with Criminal Possession of Property Subject to Forfeiture, § 45-9-206, MCA. Montana's criminal forfeiture statute provides that "[a] person commits the offense of use or possession of property subject to criminal forfeiture if the person knowingly possesses . . . property that

12

is subject to criminal forfeiture under this section." Section 45-9-206(1), MCA. Property subject to forfeiture includes "everything of value furnished or intended to be furnished in exchange for a dangerous drug[.]" Section 45-9-206(2)(e)(i), MCA. In my view, the special interrogatory simply allowed the jury to assign a dollar amount to the property in his possession which was subject to forfeiture. The jury's finding of a lesser amount of property subject to forfeiture than charged by the State should not interfere with this conviction. The jury concluded that the Defendant was guilty of possessing $225 in cash which was subject to the criminal forfeiture statute. I believe the supplemental instruction given by the District Court was entirely proper and the jury's finding of a lesser amount of property subject to forfeiture should not result in a reversal of this conviction. I dissent.

/S/ JIM REGNIER