FILED

June 17 2008

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA



DA 06-0555

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 211

STATE OF MONTANA,

        Plaintiff and Appellee,

v.

BRIAN JAMES AZURE,

        Defendant and Appellant.

APPEAL FROM:     District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC-2005-329
Honorable Ed McLean, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        Jim Wheelis, Chief Public Defender, Helena, Montana

        For Appellee:

        Hon. Mike McGrath, Montana Attorney General, Mark Mattioli, Assistant
Attorney General, Helena, Montana

        Fred Van Valkenburg, Missoula County Attorney, Jennifer Clark, Deputy
County Attorney, Missoula, Montana

Submitted on Briefs:  August 15, 2007

Decided:  June 17, 2008

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1   Brian James Azure was convicted following a jury trial in the District Court for the Fourth Judicial District, Missoula County, of failure to register as a violent offender. On appeal, he claims that the jury was bound to acquit him in light of the jury instructions given by the District Court and the evidence adduced at trial. We disagree and, thus, affirm the District Court's judgment.

## BACKGROUND

¶2   In 1997, Azure was convicted of robbery in Cascade County and sentenced to the Montana State Prison for 20 years, with 5 years suspended. Following his completion of Boot Camp, the Eighth Judicial District Court modified the sentence to 20 years, with 8 years suspended. Azure was discharged to his suspended sentence in October 2002; however, in May 2004, the court revoked the sentence and sentenced him to the Department of Corrections ("DOC") for 8 years, with 2 years suspended.

¶3   In December 2004, Azure was released from confinement and placed in the DOC's Intensive Supervision Program ("ISP") under the supervision of Dave Sonju. According to Sonju (who testified at Azure's trial on the instant offense), ISP is a sort of "conditional release." The offender lives in the community but still has the status of "inmate." ISP officers generally have small caseloads (less than 25 offenders each) involving high-risk offenders. The offenders are monitored with electronic monitoring and daily schedules, so that the ISP officers know where each offender is 24 hours a day. The ISP officers also conduct random home visits, weekly office checks, and urine tests. According to Sonju, "We do more supervision than what a standard supervision officer

2

can do with a caseload of 100." As a result, ISP is much more restrictive than standard probation.

¶4 The Sexual or Violent Offender Registration Act (Title 46, Chapter 23, Part 5, MCA) sets forth the registration requirements for persons convicted of a sexual or violent offense. Azure's robbery conviction is considered a "violent" offense under the Act, *see* § 46-23-502(9)(a), MCA (2003), and Azure does not dispute that the Act applied to him during the time period at issue here, *see* § 46-23-506(2), MCA. Of relevance to the instant appeal, a violent offender who has been sentenced to the DOC and placed in confinement must be registered under the Act at least 10 days prior to his release from confinement. Section 46-23-504(1)(b), MCA. The official in charge of the place of confinement must inform the offender of the duty to register and provide the registration information to the Department of Justice and to either the sheriff of the county or the chief of police of the municipality in which the offender intends to reside. Section 46-23-503(1), (2), MCA. In addition, within 10 days of entering a county for the purpose of residing or setting up a temporary domicile there, the offender is required to register with the county sheriff (or the chief of police, if the offender resides in a municipality). Section 46-23-504(1)(c), (2), MCA. Whenever the offender changes residence, he is required within 10 days of the change to give written notification of the new address to the agency with whom he last registered. Section 46-23-505, MCA. Knowingly failing to register, verify registration, or keep registration current is a felony offense punishable by up to 5 years imprisonment. Section 46-23-507, MCA.

3

¶5     In early December 2004, in conjunction with his release from confinement and placement in ISP, Azure registered an address on Cozy Court in Lolo, Montana. In mid December, he moved to Mormon Creek Road (also in Lolo) and thereafter registered this change of residence with the Missoula County Sheriff's Department. In early May 2005, Azure moved to an address on South 8th Street. He promptly informed Sonju of this move; however, although Sonju advised Azure on more than one occasion that he needed to register the change of residence with the Sheriff's Department as well, Azure failed to do so.

¶6     The State charged Azure on July 22, 2005, with failure to register as a violent offender. The State alleged that Azure had a prior conviction of robbery and that he knowingly had failed, on or about June 7, to keep his registration current with the Missoula County Sheriff's Department.

¶7     The case proceeded to trial on April 4, 2006. The State called two witnesses—Sonju and Jan Dietz (the support services administrator for the Missoula County Sheriff's Department)—to establish that Azure had been convicted of an offense which required registration as a violent offender, that he had changed his residence in Missoula County in May 2005, and that he had not updated his registration with the Missoula County Sheriff's Department when he moved to the address on South 8th Street. Sonju testified in this regard concerning his conversations with Azure. According to Sonju, Azure initially claimed that he did not have identification and that he could not register without I.D., but Azure later stated that he was afraid if he registered the new address, he and his

4

wife would be evicted again. Sonju noted that "quite often" the participants in the ISP program are evicted from their residences after they register.

¶8 Azure questioned Sonju concerning the DOC's Intensive Supervision Program and, in particular, Azure's status while in this program. Sonju agreed that during the entire time Azure was in ISP, he was under the DOC's (more specifically, Sonju's) "supervision." Sonju also indicated that Azure had checked in with Sonju "regularly and on a weekly basis" during his time in ISP. Azure then questioned Sonju at length concerning the Probation and Parole Bureau's Standard Operating Procedures. In particular, Azure elicited testimony from Sonju that under P&P 60-12, when an offender changes his or her address, the probation and parole officer is responsible for contacting local law enforcement to verify that the offender has registered the change and also for notifying the Department of Justice of the address change. Sonju admitted that he did not notify the Department of Justice of Azure's change. Finally, Azure introduced into evidence a Notice for Address Verification, addressed by the Montana Department of Justice to Azure and dated October 20, 2005, which stated: "You are reminded of your obligation as a registrant to inform your local law enforcement *or probation office* of any address changes or other pertinent information within 10 days of the change [MCA 46-23-505]" (emphasis added, brackets in original).

¶9 At the close of the evidence, the court read the jury a number of instructions, including the following:

Instruction No. 16
A person commits the offense of Failure to Register as an Offender
if the person is required to register under Montana law and fails to give

written notice to the agency with whom he was last registered within ten (10) days, if the person changes his residence.

Instruction No. 17
Brian Azure is a person required to register as a violent offender.

Instruction No. 18
To convict the Defendant of the offense of Failure to Register as a Violent Offender, the State must prove the following propositions:

1. The Defendant was a person required to register under Montana Law;

2. The Defendant changed his residence;

3. The Defendant failed to notify the Missoula County Sheriff's Department of the change in address within ten (10) days of the move;

4. The Defendant acted knowingly.

If you find from your consideration of all of the evidence that all of these elements have been proved beyond a reasonable doubt, then you should find the Defendant guilty.

If, on the other hand, you find from your consideration of the evidence that any of these elements has not been proved beyond a reasonable doubt, then you should find the Defendant not guilty.

Instruction No. 19
**Release of violent offender from place of confinement – duties of official in charge**

A violent offender who is released from the *custody* of the Department of Corrections, must be informed in writing not less than 10 days prior to release from the place of *confinement*, of the duty to register under this part by the official in charge of the place of confinement.

Prior to the offender's release from custody, the official shall obtain and give to the department of justice and to the sheriff of the county in which the offender intends to reside or, if the offender intends to reside in a municipality, to the chief of police of the municipality:

(a) the address at which the offender intends to reside upon release from the department's custody;

(b) the offender's fingerprints and photo, unless they are already in the possession of the department of justice, sheriff, or chief of police; and

(c) a form signed by and read to or by the offender stating that the offender's duty to register under this part has been explained to the offender. [Italics in printed instruction.]

Instruction No. 20
**Custody of the Department of Corrections – Definition**

Upon their release from confinement and supervision,…violent offenders must register in writing with the Montana Department of Justice and the sheriff of the county or chief of police of the city in which the offender intends to reside; the offender also must provide fingerprints to-- and be photographed by--law enforcement entities … [Ellipses in printed instruction.]

¶10 During closing arguments, the parties addressed whether Azure's duty to register as a violent offender had been triggered. The State argued that this duty arose "[a]s soon as this defendant was released from prison." However, Azure countered that pursuant to Instruction No. 20, violent offenders must register "[u]pon their release from containment and supervision." Relying on Sonju's testimony, Azure asserted that he "was still under [Sonju's] supervision, not confinement at that point but under his supervision and control," in May and June 2005. Azure then argued the alternate theory that under the Probation and Parole Bureau's Standard Operating Procedures, he fulfilled any duty to register by informing Sonju of the change of residence. But, in concluding his argument, Azure told the jury that they did not need to reach this alternate theory unless they got over "the first hurdle," which he explained was Instruction No. 20 and the prerequisite that he be released from "confinement *and* supervision" before having to register.

¶11 The jury ultimately returned a verdict of guilty. Thereafter, the District Court sentenced Azure to a term of five years in the Montana State Prison to run concurrently with his sentence in the Cascade County case. Azure now appeals.

**ISSUES**

¶12 We restate the issues on appeal as follows:

1. Did Instruction No. 20 become the law of the case?

7

2.  Is the jury's guilty verdict supported by the evidence under the applicable law?

## STANDARDS OF REVIEW

¶13    District courts have broad discretion in formulating jury instructions; however, that discretion is ultimately restricted by the overriding principle that jury instructions must fully and fairly instruct the jury regarding the applicable law.  *State v. Miller*, 2008 MT 106, ¶ 11, 342 Mont. 355, ¶ 11, 181 P.3d 625, ¶ 11.  We review a question on the sufficiency of the evidence to determine whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *State v. Field*, 2005 MT 181, ¶ 15, 328 Mont. 26, ¶ 15, 116 P.3d 813, ¶ 15.  Because there either is, or is not, sufficient evidence to convict, our review of a jury's verdict to determine whether sufficient evidence exists to support the verdict is de novo.  *See State v. Swann*, 2007 MT 126, ¶ 19, 337 Mont. 326, ¶ 19, 160 P.3d 511, ¶ 19; *Field*, ¶ 15.

## DISCUSSION

¶14    *Issue 1.  Did Instruction No. 20 become the law of the case?*

¶15    At the outset, we note that the trial judge, the prosecutor, and defense counsel engaged in a lengthy discussion (outside the jury's presence) about when a violent offender's duty to register is triggered under §§ 46-23-503 and -504, MCA (2003).  The prosecutor took the position that the duty arises when the offender is released from "physical confinement."  Defense counsel, by contrast, argued that in this particular case, because Azure was in the DOC's Intensive Supervision Program in May and June 2005, he was still in the DOC's "custody" and under its "supervision" and, thus, had not yet

been "released"—the critical event which triggers the duty to register. Defense counsel also pointed out, alternatively, that an offender is required under § 46-23-505, MCA, to give written notification of a change of residence "to the agency with whom the offender last registered"; and counsel argued that the probation department—more specifically, ISP—was the relevant agency, given Azure's placement in this program.

¶16    The court's and the parties' uncertainty on this matter is understandable in light of the varying terminology in the relevant statutes. Section 46-23-503(1), MCA, refers on one hand to release from "the custody" of the Department of Corrections and on the other hand to "the official in charge of the place of confinement," while § 46-23-504(1), MCA, refers to "confinement" by the DOC and release therefrom. *See also* § 46-23-506(2)(a), MCA (referring to "release from confinement"). Adding to the confusion is the following sentence from *Wagner v. State*, 2004 MT 31, 319 Mont. 413, 85 P.3d 750: "Upon their release from confinement *and supervision*, sexual and violent offenders must register in writing with the Montana Department of Justice and the sheriff of the county or chief of police of the city in which the offender intends to reside . . . ." *Wagner*, ¶ 9 (emphasis added) (citing § 46-23-503, MCA). According to Azure, who proposed Instruction No. 20, the language of the instruction derived from ¶ 9 of *Wagner*.

¶17    *Wagner*, however, involved the issue of whether requiring Wagner to register under the Sexual or Violent Offender Registration Act violated his right to full restoration of rights under Article II, Section 28(2) of the Montana Constitution. *See Wagner*, ¶ 2. Thus, the dictum in ¶ 9 of *Wagner* is not authority for Instruction No. 20. Moreover, on appeal, Azure and the State agree that Instruction No. 20 "did not accurately reflect"

9

§§ 46-23-503 and -504, MCA, because it referred to release from "supervision." For the following reasons, we likewise conclude that Instruction No. 20 and ¶ 9 of *Wagner*, from which it derived, are not accurate statements of when the duty to register under the Act is triggered. We thus overrule *Wagner* on this particular point.

¶18 Section 46-23-503(1), MCA, instructs "the official in charge of the place of confinement" to inform a violent offender being released from "the custody" of the DOC of his or her duty to register. Section 46-23-504(1)(b), MCA, states that a violent offender "must be registered" as provided in § 46-23-503, MCA, at least 10 days prior to his or her release from "confinement" by the DOC. Subsections (1)(c) and (2) of § 46-23-504, MCA, instruct the offender to register with the county sheriff or the chief of police within 10 days of entering a county or municipality, respectively, for the purpose of residing or setting up a temporary domicile. Section 46-23-505, MCA, instructs the offender, within 10 days of changing his or her residence, to give written notification of the new address to "the agency with whom the offender last registered."[1]

¶19 None of these statutes refers to "supervision." Thus, the only possible basis for construing the statutory scheme as we did in ¶ 9 of *Wagner* is the word "custody" in § 46-23-503, MCA. However, § 46-23-503, MCA, imposes a duty on "the official in charge of the place of confinement"; it does not identify the time when the offender's

---

[1] Notably, the Legislature amended the Sexual or Violent Offender Registration Act in 2005 and again in 2007. Among other things, the Legislature clarified that the agency to which notification of a change in residence must be given is the sheriff's office or the police department of the county or municipality in which the offender resides. *See* §§ 46-23-502(6), -505(1), MCA (2007). This undercuts the argument that reporting a change of address to one's supervising ISP officer is sufficient.

duty to register is triggered. Rather, considering the statutory scheme as a whole, we conclude as follows: Because a violent offender "must be registered" at least 10 days prior to his or her release from "confinement," § 46-23-504(1)(b), MCA, because a violent offender "shall" register within 10 days of entering a county or municipality for the purpose of residing or setting up a temporary domicile there, § 46-23-504(1)(c), (2), MCA, and because a violent offender could enter a county or municipality for the purpose of residing or setting up a temporary domicile as soon as he or she is released from confinement, the Legislature intended the duty to register to be triggered upon release from "confinement," not "custody" or "confinement and supervision."

¶20    Instruction No. 20, therefore, was not an accurate statement of the law. As noted above, Azure concedes this point, but he contends that since the instruction was given by the District Court, the jury was bound to follow it and acquit him. Azure's argument is relatively straightforward: The District Court instructed the jury that violent offenders must register "[u]pon their release from confinement *and supervision*" (emphasis added); a jury instruction becomes law of the case once it is delivered, and the jury is accordingly bound by it; Sonju's unrefuted testimony was that upon Azure's release from confinement, he was placed in the DOC's Intensive Supervision Program and, thus, was under the DOC's restrictive "supervision" in May and June 2005; consequently, although Azure was convicted of an offense which required registration as a violent offender, his duty to register had not yet been triggered.

¶21    As support for this argument, Azure cites *State v. Cline*, 170 Mont. 520, 555 P.2d 724 (1976), and *State v. Crawford*, 2002 MT 117, 310 Mont. 18, 48 P.3d 706. In *Cline*,

11

one of the defendants contended that under the instructions given to the jury, the evidence was insufficient to support her conviction. The State responded that one of the instructions required the State to prove an element that was not part of the charged offense. We observed, however, that the State had offered this instruction, the court had given the instruction to the jury, and at that point, the instruction became the "law of the case" and the jury was bound thereby. *Cline*, 170 Mont. at 526-27, 555 P.2d at 729.

¶22 In *Crawford*, the State similarly claimed that one of the jury instructions included an element that was not part of the charged offense. *See Crawford*, ¶¶ 20-21. Yet, during the process of finalizing the instructions, the State had not requested any alterations thereto. *See Crawford*, ¶ 11. On these facts, we held that "when the State fails to properly object to a jury instruction, the instruction, whether it includes an unnecessary element or not, becomes the law of the case once delivered, and the jury is accordingly bound by it." *Crawford*, ¶ 27.[2] In so doing, we cited approvingly the following statement in *State v. Hickman*, 954 P.2d 900, 902 (Wash. 1998): "In criminal cases, the State assumes the burden of proving otherwise unnecessary elements of the offense when such added elements are included without objection in the 'to convict' instruction." *See Crawford*, ¶ 25. We also relied on the following passage from *State v. Robbins*, 1998

---

[2] The Pacific Reporter indicates that Chief Justice Gray, Justice Regnier, and Justice Leaphart joined Justice Cotter's opinion in *Crawford* but that Justice Regnier also dissented from that opinion. *See Crawford*, 48 P.3d at 711. The former is a typographical error. Therefore, lest there be any uncertainty as to whether the *Crawford* decision garnered a majority of the Court, we note that Justice Cotter's opinion was joined by Chief Justice Gray, *Justice Rice*, and Justice Leaphart. Justice Regnier dissented and did *not* join the majority opinion.

MT 297, ¶ 30, 292 Mont. 23, ¶ 30, 971 P.2d 359, ¶ 30, *overruled in part on other grounds*, *State v. LaMere*, 2000 MT 45, ¶ 61, 298 Mont. 358, ¶ 61, 2 P.3d 204, ¶ 61:

> [W]e agree with Robbins that the State's failure to object that negligent homicide is not a lesser included offense of deliberate homicide at the settling of jury instructions renders this instruction the law of the case. In the civil context, we have long adhered to the rule that an instruction given without an objection becomes the law of the case. There is no good reason why this same rule should not apply in the criminal context under the circumstances of this case—that is, where the State had ample opportunity to object to a proposed jury instruction before it was given to the jury, but failed to do so. [Citation, brackets, and internal quotation marks omitted.]

*See Crawford*, ¶ 26.

¶23   *Cline*, *Robbins*, and *Crawford* establish that where the State has the opportunity to object to a proposed jury instruction before it is given to the jury but fails to do so, that instruction, whether or not it includes an unnecessary element, becomes the law of the case once delivered, and the jury is accordingly bound by it. Azure's reliance on this rule, however, is misplaced because, as the State points out, the prosecutor did, in fact, object to Instruction No. 20 before it was given to the jury.

¶24   We note here the Dissent's contention that the State is now objecting to Instruction No. 20 on different grounds than it argued to the District Court. Dissent, ¶ 38. The Dissent is mistaken for two reasons. First, Azure concedes in his opening brief that "[Instruction No. 20], and *Wagner*, from which it derived, did not accurately reflect §§ 46-23-503 and 504 because it referred to release from supervision . . . ." In light of this concession, the State does not expend any of its appellate brief debating whether Instruction No. 20 was an accurate statement of the law. There was no need for the State to address this point in detail, given that Azure conceded it from the outset. Rather, the

State notes Azure's concession and then argues that his reading of Instruction No. 20 is "contrary to the actual law of the case." Thus, it is not clear why the Dissent believes that the State is raising a legal objection to Instruction No. 20 on appeal, when the point had already been conceded by Azure.

¶25 Second, even if the State's argument could be interpreted as an objection to the legal content of Instruction No. 20, we conclude that the State is not arguing a new theory on appeal. As noted above, the trial judge, the prosecutor, and defense counsel engaged in a lengthy discussion about when a violent offender's duty to register is triggered under §§ 46-23-503 and -504, MCA. While defense counsel argued that the duty does not apply while an offender is "under the supervision of DOC," the State's position, which it maintained throughout the proceedings, was that the duty arises when the offender is released from "physical confinement." Thus, the Dissent's assertion in ¶ 41 that the State failed to challenge "the legal content" of Instruction No. 20 is incorrect. The State did challenge "the legal content" of the instruction, arguing that an offender under the DOC's "supervision" does, in fact, have a duty to register—though the State clearly faced an uphill battle on this point, given that the language of the instruction was a direct quote from one of this Court's published precedents (namely, ¶ 9 of *Wagner*).

¶26 Moreover, in light of the State's arguments under §§ 46-23-503 and -504, MCA, this is not a case in which the District Court was not "allow[ed] . . . to 'avoid or correct' any purported errors." Dissent, ¶ 36. To the contrary, the court was in a position to correct the error contained in Instruction No. 20. For that matter, the court purported to agree with the State's position, ruling that "under the law, Mr. Azure had an obligation to

register with either the sheriff or, if he lived within the confines of Missoula City, the chief of police; one or the other." Yet, shortly thereafter, the court inexplicably announced that it would give Instruction No. 20. Having already made her argument under the statutes, the prosecutor offered the additional argument that the case cited by Azure as authority for Instruction No. 20 involved different factual circumstances than the case at hand and that the language of the instruction, therefore, was not applicable to Azure's situation. For these reasons, we disagree with the Dissent that the State is advocating a position on appeal that it did not adequately raise in the District Court.

¶27 While Azure asserts in his opening appellate brief that the State did not object to Instruction No. 20, he concedes in his reply brief that the State did object to it. Notwithstanding, Azure contends that even though Instruction No. 20 was objected to, it became the law of the case and it dictated his acquittal. In essence, Azure would have us extend the rule of *Cline*, *Robbins*, and *Crawford* to situations in which the State has objected to the erroneous jury instruction. Yet, Azure provides no authority supporting such an extension. For its part, the State fails to address this specific question in its brief. However, we note that in the myriad cases which recognize the rule that a jury instruction may become the law of the case, the articulation of this rule invariably includes the qualification that the instruction was not objected to. *See e.g. Robbins*, ¶ 30; *Crawford*, ¶ 27; *United States v. Zanghi*, 189 F.3d 71, 79 (1st Cir. 1999); *United States v. Jokel*, 969 F.2d 132, 136 (5th Cir. 1992) (per curiam); *United States v. Romero*, 136 F.3d 1268, 1273 (10th Cir. 1998); *State v. Taggart*, 430 N.W.2d 423, 425 (Iowa 1988); *State v. Martin*, 565 P.2d 1041, 1044 (N.M. App. 1977), *overruled in part on other grounds*,

15

*State v. Wilson*, 867 P.2d 1175, 1177-78 (N.M. 1994); *People v. Leon*, 643 N.Y.S.2d 262, 263 (N.Y. App. Div. 1996); *State v. Rogers*, 730 N.W.2d 859, 862-63 (N.D. 2007); *State v. Willis*, 370 N.W.2d 193, 200 (S.D. 1985); *State v. Hickman*, 954 P.2d 900, 902 (Wash. 1998); *Sanchez v. State*, 751 P.2d 1300, 1308 (Wyo. 1988). We not aware of any cases holding that the law-of-the-case rule applies to instructions to which the government did timely object.

¶28 Moreover, we are persuaded by the Tenth Circuit's observations on this subject in *United States v. Williams*, 376 F.3d 1048 (10th Cir. 2004):

> The law of the case is applied to hold the government to the burden of proving each element of a crime as set out in a jury instruction to which it failed to object, even if the unchallenged jury instruction goes beyond the criminal statute's requirements. In cases to which the doctrine of law of the case applies, the evidence must conform to the unchallenged jury instructions to support a conviction. The doctrine of law of the case is an equitable remedy whose purpose is to prevent the government from arguing on appeal a position which it abandoned below. In the case at bar, however, the government objected to the supplemental instruction. The supplemental instruction did not become law of this case because the rationale which drives the doctrine in this context, *i.e.*, holding the government to a charge to which it agreed, has no bearing when the government objects to the instruction in the district court.

*Williams*, 376 F.3d at 1051-52 (citations omitted).

¶29 In the case at hand, the prosecutor objected to the language of Instruction No. 20. We reject Azure's contention that the instruction nevertheless became the law of the case simply because the District Court erroneously overruled the objection and gave the instruction to the jury. The State did not agree—tacitly or affirmatively—to prove that Azure had been released "from confinement *and supervision*," nor was the State required to do so under the law, for the reasons discussed above. Thus, the rationale which drives

the law-of-the-case doctrine has no bearing here, and we hold that the doctrine is inapplicable.

¶30 ***Issue 2. Is the jury's guilty verdict supported by the evidence under the applicable law?***

¶31 The remaining question is whether there was sufficient evidence upon which a rational trier of fact could find the essential elements of the charged offense beyond a reasonable doubt. In considering this question, we note that while Instruction No. 20 was an incorrect statement of the law, the error was in Azure's favor. Furthermore, Azure does not claim that the jury instructions, taken as a whole, did not otherwise fully and fairly instruct the jury regarding the applicable law. Thus, we will evaluate the evidence produced against Azure based on the essential elements of the offense as charged, disregarding the erroneous "and supervision" element of Instruction No. 20. *Cf. Williams*, 376 F.3d at 1052 (refusing to constrain its analysis of the sufficiency of the evidence based on the jury instruction to which the government had objected); *Zanghi*, 189 F.3d at 80 (stating that the patently erroneous jury instruction did not establish the standard by which the court would measure the sufficiency of the evidence; rather, the court would disregard the element set forth in the erroneous instruction and evaluate the evidence to determine if it would allow a rational jury to find each essential element of the offense, as charged under the statute, beyond a reasonable doubt).

¶32 Turning then to the evidence presented at trial, Sonju testified that Azure had been convicted of an offense which required registration as a violent offender, that Azure had been released from confinement with the DOC and placed in the Intensive Supervision

17

Program, and that Azure changed his residence to South 8th Street in May 2005. Sonju also testified that he had advised Azure, on more than one occasion, to register the change of residence with the Missoula County Sheriff's Department but that Azure did not do so for fear that he and his wife would be evicted. Finally, Dietz testified that the most recent address update the Missoula County Sheriff's Department had received from Azure was in January 2005 pertaining to his move from Cozy Court to Mormon Creek Road. Viewing this evidence in a light most favorable to the prosecution, we hold that a rational trier of fact could find beyond a reasonable doubt that Azure knowingly failed to keep his registration as a violent offender current, in violation of § 46-23-507, MCA.

## CONCLUSION

¶33    Instruction No. 20 required the State to prove more than the law requires for the offense of failure to register as a violent offender. Because the State timely objected to this instruction, the law-of-the-case doctrine does not apply here. There was sufficient evidence upon which a rational trier of fact could find the essential elements of failure to register as a violent offender beyond a reasonable doubt.

¶34    Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ JIM RICE
/S/ JOHN WARNER
/S/ BRIAN MORRIS

18

Justice W. William Leaphart, dissenting.

¶35 The majority determines that the law-of-the-case doctrine is inapplicable in the present case because the State timely objected to Instruction 20. I dissent from the majority's failure to apply the law-of-the-case doctrine. I conclude that Instruction 20 constituted the law of the case, and thus, the State bore the burden to prove the "supervision" element.

¶36 Under Montana law, a "party may not assign as error any portion of the instructions or omission from the instructions unless an objection was made specifically stating the matter objected to, and the grounds for the objection . . . ." Section 46-16-410, MCA. Raising specific objections to jury instructions allows the parties and the district courts to "avoid or correct" any purported errors. *State v. Davis*, 2000 MT 199, ¶ 38, 300 Mont. 458, ¶ 38, 5 P.3d 547, ¶ 38. Assertions of error stand or fall on the grounds raised in the district court. *Davis*, ¶ 39 (citations omitted). In *State v. Crawford*, we held that "when the State fails to *properly* object to a jury instruction, the instruction, whether it includes an unnecessary element or not, becomes the law of the case once delivered, and the jury is accordingly bound by it." 2002 MT 117, ¶ 27, 310 Mont. 18, ¶ 27, 48 P.3d 706, ¶ 27 (emphasis added). For a trial objection to be "proper," the objection must be based on the same grounds as asserted on appeal. *Davis*, ¶ 38.

¶37 The above principles requiring a party to preserve issues for appeal through "proper" objections pertain to appellants. In a criminal case, the State cannot appeal from a district court's jury instructions. Here, although the State is not the appellant, it is nonetheless contending that Azure should not receive the benefit of an erroneous

19

instruction. The State cannot, however, argue legal error at the appellate level unless it raised the error at trial.

¶38  The prosecutor, defense counsel, and the court discussed the proposed jury instructions prior to voir dire, and, as the majority notes, they presented the court their differing views as to when a violent offender's duty to register is triggered. When settling the final jury instructions prior to closing, however, the State objected to Instruction 20 on the sole grounds that the factual circumstances present in the case that Azure relied on for Instruction 20's language differed from those presented by Azure's case. On appeal, the State objects to the instruction because it is not an accurate statement of the law. Thus, because the State now objects to Instruction 20 on different grounds than it argued to the District Court, its objection is not proper. *Davis*, ¶ 38. Because the State failed to properly object to the jury instruction, by raising a factual objection at trial and not a legal objection, the jury instruction becomes the law of the case. *Davis*, ¶ 38; *Crawford*, ¶ 27.

¶39  Other courts have allowed challenged jury instructions that misstate the law to constitute the law of the case when the basis for the trial objection differed from the grounds raised on appeal. For example, in *King v. Sowers*, 471 S.E.2d 481 (Va. 1996), the trial court gave a jury instruction over the plaintiff's objection. The plaintiff objected at trial that the instruction was inapplicable to the evidence presented, but argued on appeal that the instruction misstated the law. The Virginia Supreme Court held that the instruction, though an incorrect statement of the law, became the law of the case because

the trial objection did not challenge the instruction's legal content. *King*, 471 S.E.2d at 484 (citations omitted).

¶40 In *Iowa v. Maghee*, 573 N.W.2d 1 (Iowa 1997), the criminal defendant objected on general grounds to a State's jury instruction. On appeal, however, the defendant argued that the jury instruction had no authority in Iowa law. The Iowa Supreme Court refused to allow the defendant to "amplify the grounds for the objection at trial or assert the specific objection for the first time on appeal." *Maghee*, 573 N.W.2d at 8. The court held that "the challenged instruction – right or wrong – became the law of the case" because the defendant's trial objection failed to preserve error. *Maghee*, 573 N.W.2d at 8.

¶41 The holdings of *King* and *Maghee* comport with our jurisprudence regarding appellate review of jury instructions and the law-of-the-case doctrine. At trial, the State failed to challenge the legal content of Instruction 20. Nonetheless, the State now argues that the instruction was a misstatement of the law. I conclude that since the State failed to raise a proper legal challenge to Instruction 20 at trial, the instruction becomes the law of the case, even though it does misstate the law. Considering the evidence and the applicable law of the case, including Instruction 20, I conclude that sufficient evidence does not support the jury's verdict, and I would reverse.

¶42 I dissent.

/S/ W. WILLIAM LEAPHART