DA 11-0544

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 101

STATE OF MONTANA,

        Plaintiff and Appellee,

  v.

TRISTEANA JOHNSON,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Sixth Judicial District,
In and For the County of Park, Cause No. DC 10-118
Honorable Wm. Nels Swandal, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

        Kevin S. Brown, Paoli & Brown, P.C., Livingston, Montana

      For Appellee:

        Steve Bullock, Montana Attorney General, Matthew T. Cochenour,
Assistant Attorney General, Helena, Montana

        Brett Linneweber, Park County Attorney, Kathleen Carrick, Deputy
County Attorney, Livingston, Montana

Submitted on Briefs:  March 7, 2012

Decided:  May 8, 2012

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1     Tristeana Johnson appeals a decision of the District Court for the Sixth Judicial District, Park County, finding her guilty of the charge of criminal possession of marijuana, a misdemeanor, in violation of § 45-9-102(2), MCA.  We affirm.

¶2     Johnson raised one issue on appeal which we have separated into two issues and restated as follows:

¶3     1.  Whether the District Court erred in denying Johnson's motion to dismiss the charge of criminal possession of marijuana.

¶4     2.  Whether there was sufficient evidence for the District Court to convict Johnson of the charge of criminal possession of marijuana.

**Factual and Procedural Background**

¶5     On August 8, 2010, Montana Highway Patrol Trooper Shawn Fowler was on East River Road south of Livingston when he observed Johnson's vehicle drift across the center line several times.  Trooper Fowler pulled Johnson over in what turned out to be Johnson's driveway.  Upon approaching Johnson's vehicle, Trooper Fowler noticed that there were numerous open beer containers in the vehicle, and he smelled a strong odor of marijuana coming from inside the vehicle.  Trooper Fowler later testified that he also observed other factors that led him to believe that Johnson had been smoking marijuana. When he asked Johnson if that was the case, she admitted to smoking a small amount of marijuana about an hour before she was stopped.  Johnson stated that she had a valid Montana Medical Marijuana Card, which she showed Trooper Fowler.  When Trooper

Fowler asked Johnson if she had any marijuana on her, Johnson turned over a baggie containing less than one ounce of marijuana and a glass pipe.

¶6      Shortly after Johnson was pulled over, her stepfather, Dale Turner, arrived on the scene. From Johnson's Medical Marijuana Card, Trooper Fowler learned that Turner was Johnson's caregiver. When Trooper Fowler asked Turner if he had given Johnson any marijuana, Turner replied that he had not. Turner added that he had no marijuana to give Johnson because his grow operation was not yet up and running. Johnson refused to identify where she had obtained the marijuana.

¶7      Johnson was charged with driving under the influence of alcohol or drugs in violation of § 61-8-401(1)(b), MCA; criminal possession of marijuana in violation of § 45-9-102(2), MCA; possessing an intoxicating substance while under the age of 21 in violation of § 45-5-624(1), MCA; possessing an open alcoholic beverage container in her vehicle in violation of § 61-8-460, MCA; and operating a vehicle without a valid motor vehicle liability insurance policy in violation of § 61-6-302, MCA, her second offense. Trooper Fowler did not charge Johnson with criminal possession of drug paraphernalia in violation of § 45-10-103, MCA, reasoning that Johnson was allowed to have the pipe due to her Medical Marijuana Card.

¶8      Johnson was tried in the Park County Justice Court on December 22, 2010. The Justice Court convicted her on all five counts. Johnson appealed her convictions de novo to the Sixth Judicial District Court.

¶9      On March 9, 2011, Johnson's counsel filed a motion to dismiss the charge of criminal possession of marijuana arguing that under § 50-46-201, MCA (2009), Johnson

3

could not be arrested and prosecuted for possessing marijuana as long as the amount in her possession did not exceed one ounce. Counsel also filed a Notice of Affirmative Defense to the possession charge on the grounds that under Montana's Medical Marijuana Act (the MMA),[1] where the patient had a bona fide physician and medical records demonstrating that the potential benefits of medical marijuana outweighed the health risks to the person, she could not be charged with possession. The District Court subsequently denied Johnson's motion to dismiss and reserved the issue for trial.

¶10 A bench trial was conducted on July 29, 2011, wherein the District Court acquitted Johnson of the charge of possessing an intoxicating substance while under the age of 21. However, the court found Johnson guilty of the charges of criminal possession of marijuana, possessing an open alcoholic beverage container in her vehicle, and operating a motor vehicle without a valid liability insurance policy. In addition, the court ordered counsel to file proposed findings of fact and conclusions of law regarding the charge that Johnson was driving under the influence of alcohol or drugs. After reviewing those proposed findings and conclusions, the District Court determined that while the evidence demonstrated that Johnson did have marijuana in her system, the State failed to establish that Johnson's ability to safely operate a motor vehicle was diminished. Consequently,

---

[1] Montana voters passed the MMA in 2004. It was codified at Title 50, chapter 46, Montana Code Annotated. The Montana Legislature amended the MMA in 2011, repealing certain provisions of the act including § 50-46-201, MCA. Nevertheless, since Johnson's offense was committed in August 2010, we are only concerned here with the 2009 version of the MMA. Thus, all references to the MMA herein are to the 2009 version of the act unless otherwise noted.

the court found Johnson not guilty on the charge of driving under the influence of alcohol or drugs.

¶11 The court sentenced Johnson to pay fines of $300 on the possession charge, $25 on the open container charge, and $385 on the insurance charge. The court also ordered that the plates and registration on the vehicle she was driving at the time she committed these offenses be suspended for 90 days.

¶12 Johnson now appeals from the District Court's order denying her motion to dismiss the charge of criminal possession of marijuana, and the court's subsequent judgment and order convicting her of that charge.

**Standard of Review**

¶13 " 'The denial of a motion to dismiss in a criminal case presents a question of law which we review de novo.' " *State v. LeMay*, 2011 MT 323, ¶ 27, 363 Mont. 172, 266 P.3d 1278 (quoting *State v. Roundstone*, 2011 MT 227, ¶ 11, 362 Mont. 74, 261 P.3d 1009); *see also State v. Knowles*, 2010 MT 186, ¶ 23, 357 Mont. 272, 239 P.3d 129. We review a question on the sufficiency of the evidence to sustain a conviction to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Booth*, 2012 MT 40, ¶ 7, 364 Mont. 190, 272 P.3d 89 (citing *State v. Azure*, 2008 MT 211, ¶ 13, 344 Mont. 188, 186 P.3d 1269).

**Issue 1.**

¶14 *Whether the District Court erred in denying Johnson's motion to dismiss the charge of criminal possession of marijuana.*

5

¶15 Johnson argues on appeal that she should not have been charged with criminal possession of marijuana because she holds a valid Montana Medical Marijuana Card. She maintains that under § 50-46-201, MCA, she cannot be arrested, prosecuted or penalized in any manner for possessing less than one ounce of marijuana regardless of where she obtained it.

¶16 The State argues that Johnson's interpretation of § 50-46-201, MCA, fails to take into consideration the MMA as a whole. The State maintains that when viewed in its entirety, the MMA requires cardholders to obtain marijuana from a single, approved caregiver, and that the purchase of marijuana from anyone other than the cardholder's approved caregiver is illegal.

¶17 Section 50-46-201(1), MCA, provided as follows:

> A person who possesses a registry identification card issued pursuant to 50-46-103 may not be arrested, prosecuted, or penalized in any manner or be denied any right or privilege, including but not limited to civil penalty or disciplinary action by a professional licensing board or the department of labor and industry, if:
> (a) the qualifying patient or caregiver acquires, possesses, cultivates, manufactures, delivers, transfers, or transports marijuana not in excess of the amounts allowed in subsection (2); or
> (b) the qualifying patient uses marijuana for medical use.

In addition, § 50-46-201(2), MCA, provided that "[a] qualifying patient and that qualifying patient's caregiver may not possess more than six marijuana plants and 1 ounce of usable marijuana each."

¶18 Johnson contends that by convicting her of criminal possession of marijuana, the court effectively amended § 50-46-201, MCA, to insert the limitation that the ounce of

marijuana a cardholder is allowed to possess may only be obtained from the cardholder's caregiver.

¶19　When interpreting statutes, this Court strives to implement the legislative objectives, and we are bound by a statute's plain language if we can glean the intent from the words used in the statute. *State v. Merry*, 2008 MT 288, ¶ 12, 345 Mont. 390, 191 P.3d 428 (citing *Boettcher v. Montana Guar. Fund*, 2007 MT 69, ¶ 19, 336 Mont. 393, 154 P.3d 629). Our task in interpreting statutes is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted. *State v. Ashmore*, 2008 MT 14, ¶ 12, 341 Mont. 131, 176 P.3d 1022 (citing § 1-2-101, MCA).

¶20　In addition, when interpreting statutes within a legislative act, " '[i]t is our duty to interpret individual sections of an act in such a manner as to ensure coordination with the other sections of the act.' " *Zuazua v. Tibbles*, 2006 MT 342, ¶ 25, 335 Mont. 181, 150 P.3d 361 (quoting *Howell v. State*, 263 Mont. 275, 286, 868 P.2d 568, 575 (1994)). This Court operates under the presumption that the Legislature does not pass meaningless legislation, and we will harmonize statutes relating to the same subject in order to give effect to each statute. *State v. Brendal*, 2009 MT 236, ¶ 18, 351 Mont. 395, 213 P.3d 448 (citing *Oster v. Valley Co.*, 2006 MT 180, ¶ 17, 333 Mont. 76, 140 P.3d 1079). We will read and construe the statute as a whole to avoid an absurd result and to give effect to a statute's purpose. *Brendal*, ¶ 18 (citing *In re Marriage of Shirilla*, 2004 MT 28, ¶ 12, 319 Mont. 385, 89 P.3d 1).

¶21 The State maintains that Johnson's interpretation of § 50-46-201, MCA, is not persuasive because it is inconsistent with the other statutes within the MMA, which do not authorize patients to purchase marijuana from unauthorized drug dealers. Instead, a qualifying patient is required under the MMA to obtain marijuana from a single caregiver. Section 50-46-102(1)(a), MCA ("A qualifying patient may have only one caregiver at any one time."). Similarly, § 50-46-103(4)(a)(i), MCA, provided that a caregiver could obtain a registry identification card if the caregiver was "named in a qualifying patient's approved application" and if the caregiver signed a statement "agreeing to provide marijuana only to qualifying patients who have named the applicant as caregiver . . . ." Contrary to Johnson's assertions, the MMA does not sanction cardholders obtaining marijuana from anyone other than their registered caregiver.

¶22 Johnson also contends that the statutory affirmative defenses then in existence belied any rational justification for limiting the scope of the MMA to cover marijuana obtained only from a cardholder's registered caregiver. She maintains that under § 50-46-206, MCA, the affirmative defense statute, even a non-cardholder is shielded from conviction. Section 50-46-206, MCA, provided in pertinent part:

> **Affirmative defense.** Except as provided in 50-46-205, it is an affirmative defense to any criminal offense involving marijuana that the person charged with the offense:
> (1) (a) has a physician who states that or has medical records that indicate that, in the physician's professional opinion, after having completed a full assessment of the person's medical history and current medical condition made in the course of a bona fide physician-patient relationship, the potential benefits of medical marijuana would likely outweigh the health risks for the person . . . .

8

¶23 Contrary to Johnson's contentions, this statute does not support her argument. The existence of a statutory affirmative defense, by itself, cannot preclude a conviction. Rather, a defendant has the burden to raise and prove an affirmative defense. *State v. Leprowse*, 2009 MT 387, ¶ 11, 353 Mont. 312, 221 P.3d 648 (citing *State v. Reynolds*, 2004 MT 364, ¶ 9, 324 Mont. 495, 104 P.3d 1056). Here, although Johnson raised the affirmative defense in the court below, she did not prove it.

¶24 Under § 50-46-103(7), MCA, a qualifying patient faced significant consequences if the patient changed caregivers without notifying the Department of Public Health and Human Services. "A person who has been issued a registry identification card shall notify the department of any change in the qualifying patient's . . . caregiver . . . within 10 days of the change. *If a change occurs and is not reported to the department, the registry identification card is void*." Section 50-46-103(7), MCA (emphasis added).

¶25 We agree with the State's position that it makes no sense that Johnson could buy marijuana from an unidentified drug dealer, rather than her caregiver, and somehow have more legal protections than a patient who changed caregivers without notice. Consequently, we reject Johnson's affirmative defense argument.

¶26 In its brief on appeal, the State resorts to the legislative history of the MMA, specifically the 2004 Voter Information Pamphlet, to support its argument that cardholders must obtain their marijuana from their registered caregivers. We adhere to the rule of statutory construction that "there is no reason for us to engage in a discussion of the legislative history to construe [a] statute when we have determined that the language of the statute is clear and unambiguous on its face." *State v. Goebel*, 2001 MT

9

73, ¶ 21, 305 Mont. 53, 31 P.3d 335; *accord Connecticut Natl. Bank v. Germain*, 503 U.S. 249, 253-54, 112 S. Ct. 1146, 1149 (1992) ("[I]n interpreting a statute a court should always turn first to one, cardinal canon before all others. We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.' " (internal citations omitted)).

¶27 We conclude in this case that the MMA is clear and unambiguous on its face, and that the District Court's interpretation harmonized the statutes within the MMA.

¶28 Accordingly, we hold that the District Court did not err in denying Johnson's motion to dismiss the charge of criminal possession of marijuana.

**Issue 2.**

¶29 *Whether there was sufficient evidence for the District Court to convict Johnson of the charge of criminal possession of marijuana.*

¶30 Section 45-9-102, MCA, the statute under which Johnson was charged, specifies that, except as provided under the MMA, "a person commits the offense of criminal possession of dangerous drugs if the person possesses any dangerous drug, as defined in 50-32-101." Consequently, to support a conviction for possession of marijuana, the State had to show that Johnson was not shielded from prosecution by the MMA, and that she possessed a dangerous drug. The State met its burden in this case.

¶31 First, the evidence showed that Johnson was in possession of a dangerous drug. Under §§ 50-32-101(6) and -222(4)(t), MCA, marijuana is listed as a Schedule 1 dangerous drug. Trooper Fowler testified at trial that Johnson had a baggie of marijuana

10

in her possession when he pulled her over for driving erratically. And, Johnson herself asserts in her brief on appeal that "[i]t is undisputed she possessed less than one ounce of marijuana."

¶32 Second, as we indicated in the previous issue, although Johnson possessed a Medical Marijuana Card, the MMA could not shield her from prosecution if she did not obtain the marijuana in her possession from her registered caregiver. Johnson's stepfather was her registered caregiver. He told Trooper Fowler on the night of the incident that he had not provided Johnson with the marijuana she had in her possession because his grow operation was not yet up and running.

¶33 Viewing the evidence in this case in a light most favorable to the prosecution as we are constrained to do, we conclude that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Booth*, ¶ 7; *Azure*, ¶ 13.

¶34 Accordingly, we hold that there was sufficient evidence for the District Court to convict Johnson of the charge of criminal possession of marijuana.

¶35 Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ BRIAN MORRIS
/S/ JIM RICE
/S/ BETH BAKER
/S/ PATRICIA COTTER