DA 11-0243

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2012 MT 40

STATE OF MONTANA,

        Plaintiff and Appellee,

  v.

JIMMY STEVEN BOOTH, JR.,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Seventeenth Judicial District,
In and For the County of Valley, Cause No. DC 10-16
Honorable John C. McKeon, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Joseph P. Howard; Joseph P. Howard, P.C., Great Falls, Montana

        For Appellee:

            Steve Bullock, Montana Attorney General; Jonathan M. Krauss,
Assistant Attorney General, Helena, Montana

            Nicholas Murnion, Valley County Attorney, Glasgow, Montana

Submitted on Briefs:  January 25, 2012

Decided:  February 21, 2012

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1     Jimmy Steven Booth, Jr. (Booth), was charged with felony criminal possession of precursors to dangerous drugs pursuant to § 45-9-107, MCA (Count I), and misdemeanor restricted possession of ephedrine or pseudoephedrine in violation of § 50-32-501, MCA (Count II).  He was convicted by a jury on January 5, 2011, and committed to the Department of Corrections for seven years with two years suspended on Count I, and given a six-month concurrent sentence to the Valley County Jail on Count II.

¶2     Booth appeals, claiming that the State presented insufficient evidence to convict him of criminal possession of precursors to dangerous drugs.  He also claims that his defense counsel was ineffective in failing to move for dismissal of Count I at the close of the State's case.  We state the dispositive issue as follows:

¶3     *Does § 45-9-107(1), MCA, require possession of two or more of the statute's listed precursor chemicals as an element of the offense?*

FACTUAL AND PROCEDURAL BACKGROUND

¶4     Law enforcement received reports from two pharmacies in Glasgow that Booth and his companion, Rebekah Ostwald, were purchasing the maximum allowable amount of pseudoephedrine cold medicine.  Pharmacy employees also reported that Booth appeared nervous, fidgety, and wore no coat despite single-digit temperatures.  Further, both signed pharmacy logs using out-of-town addresses.  Police made contact with the duo, who explained that they were on their way back home to Williston, North Dakota, from Ostwald's National Guard training in Malta.  They claimed to be stocking up on 12-

2

hour pseudoephedrine products because Booth worked half-day shifts on oil rigs and could not stop working to take pills more frequently.

¶5    Ostwald would not consent to a search of her car, so police seized the car and applied for a search warrant. Upon receiving a warrant, a search yielded 10 boxes of cold medicine containing 10.08 grams of pseudoephedrine. The pills were from the two pharmacies in Glasgow, along with some purchased at Valley Drug in Malta. The search also revealed two bags of insulin syringes, a receipt for the purchase of pseudoephedrine from a Williston pharmacy, and a receipt for the purchase of Coleman fuel and lithium batteries from a WalMart in Williston.

¶6    At trial, the State presented witnesses who testified that the pseudoephedrine, discovered in conjunction with the receipts for Coleman fuel and lithium batteries, was consistent with the manufacture of methamphetamine. Defense counsel conceded to Booth's possession of 10.08 grams of pseudoephedrine, but argued that the State failed to prove all of the elements of Count I because Booth had not possessed the drug "in combination" with another precursor as required by statute. Despite making this argument, defense counsel failed to move for the dismissal of Count I at the close of the State's argument.

STANDARDS OF REVIEW

¶7    We review a question on the sufficiency of the evidence to determine whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Azure*, 2008 MT 211, ¶ 13, 344 Mont. 188, 186 P.3d 1269. Our review of a

3

jury's verdict to determine whether sufficient evidence exists to support the verdict is de novo. *Azure*, ¶ 13.

DISCUSSION

¶8      Booth was charged with criminal possession of precursors to dangerous drugs, an offense that a person commits when:

> (a) the person possesses any material, compound, mixture, or preparation that contains any combination of the following with intent to manufacture dangerous drugs:
> (i) phenyl-2-propanone (phenylacetone);
> (ii) piperidine in conjunction with cyclohexanone;
> (iii) ephedrine;
> (iv) lead acetate;
> (v) methylamine;
> (vi) methylformamide;
> (vii) n-methylephedrine;
> (viii) phenylpropanolamine;
> (ix) pseudoephedrine;
> (x) anhydrous ammonia;
> (xi) hydriodic acid;
> (xii) red phosphorus;
> (xiii) iodine in conjunction with ephedrine, pseudoephedrine, or red phosphorus;
> (xiv) lithium in conjunction with anhydrous ammonia; or
> (b) the person knowingly possesses anhydrous ammonia for the purpose of manufacturing dangerous drugs.

Section 45-9-107(1), MCA. Violation of the statute is a felony.

¶9      A fundamental principle of our criminal justice system is that the State must prove every element of a charged offense beyond a reasonable doubt. *State v. Daniels*, 2011 MT 278, ¶ 33, 362 Mont. 426, 265 P.3d 623. As noted above, an element of § 45-9-107(1)(a), MCA, requires that the defendant "possesses any material, compound, mixture, or preparation that contains any combination of the following [precursor

4

chemicals]. . . ." Booth argues that the State's evidence was insufficient to convict him because, of the list of precursors set forth in § 45-9-107(1)(i)-(xiv), MCA, he possessed pseudoephedrine alone. He argues that the plain language of the statute requires a showing he possessed a "combination" of the listed precursors. The State argues that the statute does not require the possession of two or more precursors.

¶10 From the outset, it is important to note that the receipt for the Coleman fuel and lithium batteries is not implicated in this appeal. The State's expert testified that the receipt evidenced the classic pattern of acquiring the materials needed to manufacture methamphetamine, and was thus relevant to the issue of intent. However, Coleman fuel (petroleum naphtha) is not found within the § 45-9-107(1)(a), MCA, list of precursor chemicals. Further, lithium is solely implicated when found "in conjunction with anhydrous ammonia." Section 45-9-107(1)(a)(xiv), MCA. As such, our analysis is constrained to the argument of whether Booth's possession of 10.08 grams of pseudoephedrine is proscribed by the statute.

¶11 In the construction of a statute, we are simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted. Section 1-2-101, MCA; *State v. Stiffarm*, 2011 MT 9, ¶ 12, 359 Mont. 116, 250 P.3d 300. Our function as an appellate court is to ascertain and carry out the Legislature's intent by looking at the plain meaning of the words in the statute. *Stiffarm*, ¶ 12. If legislative intent can be determined by the plain meaning of the words, we may go no further in applying any other meaning or interpretation. *Stiffarm*, ¶ 12.

¶12 The State refers to the canon of statutory construction that "[t]he singular includes the plural and the plural the singular," and argues that possession of "'precursors' would necessarily include possession of a single identified 'precursor.'" *See* § 1-2-105(3), MCA. However, we cannot ignore that the Legislature saw fit to include the word "combination" in the statute. There is a presumption that the Legislature does not perform meaningless acts. *See e.g. U.S. v. Juvenile Male*, 2011 MT 104, ¶ 10, 360 Mont. 317, 255 P.3d 110. The word "combine" means "to join (two or more substances) to make a single substance, such as a chemical compound." American Heritage Dictionary 377 (3d ed., Houghton Mifflin Co. 1996). Clearly, a single precursor chemical cannot be joined or united into a compound. Thus, we find the language of § 45-9-107(1)(a), MCA, clear and unambiguous and we need not consult canons of statutory construction in determining the intent of the Legislature.

¶13 We construe the language that states "possesses any material, compound, mixture, or preparation that contains any combination of" to mean that one must possess two or more of the listed precursor chemicals or combinations of chemicals with the intent to manufacture methamphetamine to fall within the statute. This construction is based on a common sense approach that gives proper import to the use of the plural "precursors," and the inclusion of the word "combination" in the statute.

¶14 Accordingly, we conclude that the jury could not have rationally found beyond a reasonable doubt that the items seized from Ostwald's automobile met the statutory requirements of § 45-9-107, MCA. Given the above conclusion, it is unnecessary for us to address Booth's claim of ineffective assistance of counsel.

6

CONCLUSION

¶15 For the foregoing reasons, we reverse in part the judgment of the District Court and remand so that it can dismiss the felony criminal possession of precursors to dangerous drugs charge against Booth.

/S/ MIKE McGRATH

We concur:

/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ BRIAN MORRIS

Justice Jim Rice, concurring.

¶16 I concur in the decision to reverse, but under a different rationale.

¶17 I believe that § 45-9-107, MCA, is ambiguous. The pertinent statutory language provides that a person commits the offense of criminal possession of precursors to dangerous drugs "if . . . the person possesses any material, compound, mixture, or preparation that contains any combination" of the list of precursor chemicals with intent to manufacture dangerous drugs. Section 45-9-107(1)(a), MCA. As the Court notes, the word "combination" typically refers to two or more items joined together. Opinion, ¶ 12. Yet, the terms "any material" or "compound" could indicate that possession of just one of the listed substances would be sufficient to incur criminal liability, particularly because it is not clear whether the term "combination" applies to "material" and "compound," or just to "preparation." In the latter case, possession of a "preparation that contains any

7

combination" would be a separate offense from possession of a "compound." Further, as the State argues: "Interpreting the term 'combination,' as used in the statute, to require possession of 'two or more' of the specified precursors--(1)(a)(i) through (xiv)--adds unnecessary and unintended terms to the offense. The legislature has already specifically indicated its intent to criminalize the possession of certain combinations of chemicals as precursors--noting those chemicals that would not constitute precursors, except in combination with other chemicals." *See* § 45-9-107(1)(a)(xiii) and (xiv), MCA ("iodine in conjunction with ephedrine, pseudoephedrine, or red phosphorus" and "lithium in conjunction with anhydrous ammonia"). Concluding that the statutory language is ambiguous, I would look to legislative history. *See In re K.M.G.*, 2010 MT 81, ¶ 26, 356 Mont. 91, 229 P.3d 1227 (citations omitted) ("When the intent of the legislature cannot be determined from the plain language of the statute, we examine the statute's legislative history to determine its correct interpretation.").

¶18 The language in question, "possesses any material, compound, mixture, or preparation that contains any combination" and most of the listed precursors, were added to the statute by Senate Bill 6 in 1999. Laws of Montana, 1999, ch. 24, § 1, at 82-83. Mike Batista, Administrator of the Division of Criminal Investigation of the Department of Justice, testified in support of the bill before both the House and Senate Judiciary Committees. In the House Committee hearing, Batista testified that "the key" to the bill is that the chemicals have to be used together and there has to be intent to manufacture dangerous drugs. Mont. H. Comm. on Jud., *Hearing on Sen. Bill 6*, 56th Legis., Reg. Sess. (Jan. 19, 1999). In response to a question about whether retailers or pharmacists

8

would need to register these chemicals or whether prescriptions would be needed, Mr. Batista responded, "The short answer is no. Most of the chemicals you see before you [on the list], with few exceptions, are not controlled. Those chemicals have to be used in conjunction with one another. And the key point here is to establish the intent to manufacture." Mont. H. Comm. on Jud., *Hearing on Sen. Bill 6* (Jan. 19, 1999). Further, in response to a question about whether there is a presumption that possession of some or all of these chemicals would constitute intent to manufacture dangerous drugs, Mr. Batista offered this explanation: "This is a two-tier bill. Most of the chemicals you see [on the list]—if you have them, if you possess them by themselves—it's not against the law. There's not a law against possession of those *individually*. It's two-tier, you have to have them *in conjunction with other chemicals* used to manufacture meth, which those are, and you have to have intent." Mont. H. Comm. on Jud., *Hearing on Sen. Bill 6* (Jan. 19, 1999) (emphases added).

¶19 I believe this legislative history resolves the ambiguity in the statutory language and demonstrates that possession of two or more of the listed precursor chemicals was intended to be necessary, along with the intent to manufacture dangerous drugs, in order to be held criminally liable.

¶20 I concur.

/S/ JIM RICE

Justice James C. Nelson and Justice Michael E Wheat join the concurring opinion of Justice Rice.

/S/ JAMES C. NELSON
/S/ MICHAEL E WHEAT

9