DA 12-0484

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 80

LARRY COLEMAN,

       Plaintiff and Appellant,

   v.

THE STATE OF MONTANA, acting by
and through THE MONTANA DEPARTMENT
OF TRANSPORTATION,

       Defendant and Appellee.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. CDV-2010-1074
Honorable Kathy Seeley, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Richard A. Reep, Esq., Reep, Bell & Laird, P.C.; Missoula, Montana

      For Appellee:

          Eli Z. Clarkson, Special Assistant Attorney General, Montana Dept. of
Transportation; Helena, Montana

                      Submitted on Briefs:  January 31, 2013

                              Decided:   March 26, 2013

Filed:

                         _____
                                 Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1     Larry Coleman (Coleman) appeals from the judgment of the First Judicial District Court, Lewis and Clark County, affirming the State Tax Appeal Board's (STAB) conclusion that Coleman violated § 15-70-330, MCA.  We affirm.

¶2     We review the following issue on appeal:

¶3     *Did the District Court err by affirming STAB's determination that Coleman violated § 15-70-330, MCA, and that his truck is not entitled to a special exemption under Admin. R. M. 18.10.110(1) and (2)?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶4     Coleman operates a cattle ranch near Charlo, Montana.  On November 14, 2008, Coleman was driving his 1999 International Harvester truck on U.S. Highway 212 near Charlo.  The truck had been modified with the addition of a feedbox, hoist and tailgate attached to it.  The truck was not licensed or registered.  Joseph Lavadure (Lavadure), a Montana Department of Transportation (MDOT) Motor Carriers Officer, stopped Coleman and, with Coleman's permission, took a sample of the fuel in the tank of the vehicle and sent it to MDOT for analysis.  The analysis showed the fuel sample was dyed diesel fuel and in excess of the legal concentration allowed to be in a fuel tank in a non-exempt vehicle being driven on a public highway.  Coleman was cited for violating § 15-70-330, MCA.

¶5     Coleman requested a formal review of his citation.  He argued his vehicle is designed for agricultural work and bears physical characteristics that render its primary use off-road and off-highway.  Accordingly, he claimed that pursuant to Admin. R. M. 18.10.110(1) and

(2), he is entitled to a special exemption from the prohibition against dyed fuel on the public roadways. MDOT countered that the vehicle is designed to transport persons or property on the public roads and highways and that its physical characteristics do not demonstrate it is intended for primary use in an off-road manner. MDOT thus argued that Coleman's vehicle does not meet any special exemptions that would allow it to use dyed diesel fuel on the public roads of Montana.

¶6 On December 8, 2009, a hearing was conducted by a hearing examiner appointed by MDOT. At the hearing, the parties presented exhibits, witness testimony, and arguments of their respective positions. Coleman admitted during testimony to placing untaxed dyed diesel fuel in his vehicle, and acknowledged that he was on a public road when stopped by Lavadure. He testified that he left his ranch land with his unloaded truck and drove on the public highway with the express purpose of driving into Charlo to pick up a load of corn and transport it back to his ranch. The corn was loaded into his truck from the railroad area in Charlo, and he drove the truck to another part of his ranch on public roads. Coleman testified that the only reason he was on the highway that day was to haul feed.

¶7 Coleman admitted the truck was originally designed for highway use, but maintained it was converted into a vehicle primarily used for farming purposes in an off-road capacity. Coleman offered photos of the truck to help explain its special modifications, which include a feedbox, hoist and tailgate. Coleman testified that he obtained the truck because of these modifications and only uses it for agricultural purposes on his ranch. He stated he uses the truck to haul dirt and feed for his cattle, but testified that it could also be used to haul grain

3

or fertilizer if needed. Coleman further testified that he used the truck to go to Charlo on the day in question because the truck is equipped to be used for this purpose.

¶8     Lavadure also testified. According to his testimony, Lavadure has been a motor carrier officer for over 18 years and, among other duties, is responsible for checking red fuel violations on the public highways. Lavadure testified that he has received specialized training on distinguishing between vehicles designed for the public roads and vehicles that are defined as "off-road," such as special mobile vehicles (SM vehicles). Lavadure stated that according to the VIN number taken from Coleman's 1999 International Harvester, the vehicle is defined as a truck. He testified it was manufactured to be a truck and designed to carry people and property on highways. Lavadure discussed SM vehicles and referenced several pictures of SM vehicles provided in the exhibits. He explained that SM vehicles are different than trucks; SM vehicles are used primarily off-road and are not designed to carry passengers or property on highways. He testified that the distinction is the basic design of the vehicle, not what may or may not be attached to it. Lavadure testified that Coleman's truck did not qualify as a SM vehicle or off-road equipment, and therefore was not entitled to any exemption that would allow it to be used on public highways using dyed diesel fuel. Lavadure stated that the fact that Coleman may or may not use it for agricultural purposes has no bearing on whether it is a SM vehicle.

¶9     The hearing examiner issued his proposed findings of fact, conclusions of law and order in February 2010, upholding Coleman's citation for violating § 15-70-330, MCA. In the proposed decision, the hearing examiner carefully reviewed Coleman's claim that he is

4

entitled to an exemption under Admin. R. M. 18.10.110(1) and (2), analyzing the relevant statutes and administrative regulations and applying them to Coleman's vehicle. He determined that the fact that Coleman's truck has had modifications for other purposes does not affect its original design, and agreed with MDOT's position that the modifications actually made Coleman's truck even better for the purpose Coleman admitted he used it for on the highway: moving feed from Charlo to his ranch. The hearing examiner concluded "[t]he truck in this case was used to transport property on the public highway . . . [a]nd when fueled with non-taxed dyed diesel fuel, a use that is prohibited by law." He determined Coleman is not entitled to any exemption under Admin. R. M. 18.10.110(1) and (2).

¶10 In April 2010, MDOT adopted the hearing examiner's proposed decision. Coleman appealed to STAB, which affirmed MDOT's decision. Coleman then sought judicial review by the First Judicial District Court. The District Court reviewed the evidence and arguments presented during the administrative hearing and affirmed STAB's decision. The court determined the evidence presented during the administrative hearing indicated that Coleman's vehicle's alterations "simply enhanced its capability to transport property, whether on a public highway or on a ranch." Coleman appeals.

## STANDARD OF REVIEW

¶11 We review for correctness a district court's conclusions of law. *Pacificorp v. State*, 2011 MT 93, ¶ 15, 360 Mont. 259, 253 P.3d 847. We review a district court's order

5

affirming an administrative decision of STAB to determine whether the findings of fact are clearly erroneous and whether STAB correctly interpreted the law. *Pacificorp*, ¶ 15.

## DISCUSSION

¶12 *Did the District Court err by affirming STAB's determination that Coleman violated § 15-70-330, MCA, and that his truck is not entitled to a special exemption under Admin. R. M. 18.10.110(1) and (2)?*

¶13 This case involves a citation and imposition of penalty for a violation of § 15-70-330(3)(a), MCA, which provides in relevant part:

> A special fuel user may not use dyed special fuel to operate a motor vehicle upon the public roads and highways of this state unless the use is permitted pursuant to rules adopted under subsection (3)(b).

Coleman first argues that he was neither a special fuel user nor was he using special fuel as described in § 15-70-330(3)(a), MCA, because he purchased the fuel for operation of farm vehicles on his ranch and not on Montana's public roads and highways. A special fuel user is defined as "a person who consumes in this state special fuel for the operation of motor vehicles owned or controlled by the person upon the highways of this state." Section 15-70-301(21)(a), MCA. Coleman admitted that he was driving his modified 1999 International Harvester truck on a public road, using dyed diesel fuel, when he was cited. He therefore was a special fuel user subject to the provisions of § 15-70-330(3), MCA.

¶14 Section 15-70-330(3)(b), MCA, states:

> The department shall adopt and enforce reasonable rules for the movement of off-highway vehicles traveling from one location to another on public highways, public roads, or streets when using dyed fuel or nontaxed fuel.

6

Pursuant to § 15-70-330(3)(b), MCA, the MDOT adopted Admin. R. M. 18.10.110, which provides in relevant part:

> (1)    For the purpose of this rule, an "off-highway or off-road vehicle" is defined as a vehicle not designed to transport persons or property upon the public roads and highways of this state, including special mobile (SM) plated vehicles and vehicles with physical characteristics intended for primary use in an off-road manner which may or may not be licensed as special equipment. These vehicles may occasionally move on the public road for purposes such as movement between job sites or repair.
>
> (2)    There will be no restriction for miles traveled on the highway from location to location, so long as such travel is occasional and for those purposes listed above.

¶15    Coleman's primary argument on appeal is that the District Court erred by affirming administrative rulings holding that only the "original design" of his truck could be considered in determining whether the vehicle was an "off-road vehicle." He argues that neither § 15-70-330(3), MCA, nor Admin. R. M. 18.10.110(1) and (2) limit design consideration of off-highway and off-road vehicles to the vehicle's original design. Rather, he asserts the rules require inquiry into the current design and use of the vehicle. He maintains that due to the modifications made to his truck, the truck is specially designed as a feed truck, primarily used for agricultural purposes, not for transporting people or property upon public roads or highways. He argues the District Court's decision incorrectly "eliminates consideration of the present configuration and primary use of a farm vehicle modified for primary off-road purposes while focusing on the original design."

¶16    MDOT contends Coleman's truck is "clearly designed to move property on the public roads, and, on the day Mr. Coleman was stopped, was used in this very fashion." MDOT

7

argues that the facts that the truck has a feedbox, hoist and tailgate attached to it and that Coleman uses the vehicle for agricultural purposes do not mean the vehicle is not designed to transfer persons or property upon the public roads. MDOT maintains the truck's modifications only enhanced its capabilities to transport people or property upon public roads. Accordingly, MDOT argues the District Court correctly affirmed Coleman's citation for violating § 15-70-330(3), MCA.

¶17 As evident by the language of the law, it is the vehicle's design that determines whether it constitutes an off-road vehicle entitled to a special exemption under Admin. R. M. 18.10.110(1) and (2). On appeal, Coleman does not argue his vehicle is a SM plated vehicle, but rather that it fits into the exception provided in Admin. R. M. 18.10.110(1) for "vehicles with physical characteristics intended for primary use in an off-road manner which may or may not be licensed as special equipment." Coleman argues this definition says nothing about original design, and instead speaks directly to "characteristics" and "intent." He maintains this language would not be in the regulation if only original design is at issue.

¶18 Although Coleman argues the court *only* considered the original design of his truck in determining whether it was entitled to a special exemption, a thorough review of the record shows otherwise. The hearing examiner looked at the vehicle's original design—stating that Lavadure and Coleman both acknowledged the vehicle was originally designed for use on the public highways—however he did not limit his inquiry to that. In his proposed decision, the hearing examiner referred to the exhibits and testimony presented at the hearing that explained the modifications made to Coleman's truck and noted the vehicle's current

8

physical characteristics. After evaluating the evidence, the hearing examiner determined the fact that the truck has had modifications for other purposes and is now fitted with a feedbox, hoist and tailgate does not affect its original design. The hearing examiner concluded the changes actually made the vehicle even better for the purpose Coleman admitted he used it for when traveling on the public highway—the moving of property from the city of Charlo to his ranch land. The hearing examiner used the original design as a starting point and then looked at the vehicle's modifications and current physical characteristics to determine if they changed the vehicle's design so that it was no longer a truck designed to transport people or property on public highways or roads. He concluded they did not.

¶19 The District Court likewise examined the modifications of the vehicle as part of its review of STAB's holdings. The court looked at the exhibits and testimony presented at the hearing and noted that "[w]hile the truck has what appears to be a large dump box, it is otherwise configured like other trucks equipped for highway use." It determined the evidence indicates the vehicle's alterations only enhanced its ability to transport property. We therefore disagree with Coleman's interpretation that these prior holdings were based only on an inquiry of the vehicle's original design and not on any consideration of its present configuration.

¶20 Coleman asserts that our rules of interpretation of statutes do not allow consideration of the original design of the vehicle. Because we are to determine the legislative intent "by looking at the plain meaning of the words in the statute" and not "insert what has been omitted," Coleman contends the District Court's decision is based on language inserted into

9

§ 15-70-330(3), MCA, and Admin. R. M. 18.10.110 that was not intended by the legislature—specifically, the word "original." *State v. Booth*, 2012 MT 40, ¶ 11, 364 Mont. 190, 272 P.3d 89. While Coleman correctly points out that the relevant rules and regulations do not include the word "original" with respect to a vehicle's design, we do not find MDOT inserted this word into the rules. If it had, the decision would have been based on the determination that the vehicle was "*originally* designed to transport persons or property upon the public roads and highways of this state." This would have meant the focus was exclusively on the original design, despite any modifications that could have changed it. However, this was not the case. Instead, as we already discussed, the vehicle's original design, modifications and current physical characteristics were all examined to reach a determination that the current design was the same as the original design—to transport people or property on the public highways. We do not find that considering the original design as part of the inquiry into the current design is against legislative intent.

¶21 Coleman relies on the fact that he uses the vehicle for agricultural purposes to support his position that it was designed as an off-road vehicle. He claims his vehicle is an implement of husbandry, which is defined as "a vehicle that is designed for agricultural purposes and exclusively used by the owner of the vehicle in the conduct of the owner's agricultural operations." Section 61-1-101(29), MCA. However, MDOT's decision does not include such a finding. Admin. R. M. 18.10.110(1) specifically defines an off-road vehicle as one "not designed to transport persons or property upon the public roads and highways . . ." which includes vehicles with physical characteristics intended for primary use in an off-

road manner. Just because Coleman primarily uses the vehicle on his ranch, off public highways and roads, does not mean it is not designed for the transfer of people and property on public roads. *See State v. Patton*, 227 Mont. 167, 737 P.2d 498 (1987).[1] Coleman admitted he used the vehicle to drive to Charlo on public highways on the day in question to pick up feed from the railroad and transport it back to his ranch because it was equipped to be used for this purpose. Whether he typically used the vehicle for this purpose or not does not impact whether it was designed for such use.

¶22 Coleman points to two other cases in which MDOT stipulated that International Harvesters were redesigned to meet the definition of an off-highway vehicle and an implement of husbandry. He argues these two cases represent the proper interpretation and application of the relevant rules because MDOT considered the current design and use of the trucks to determine if they met the definitions of an off-highway vehicle and implement of husbandry, not the original design. These stipulations provide that the vehicles met the definitions "due to the[ir] significant and permanent modifications." Here, the hearing examiner, MDOT, STAB and the District Court looked at the modifications of Coleman's truck and determined they were not so significant or permanent to convert the truck into an

---

[1] In *Patton*, the Court affirmed a district court's holding that a vehicle was not an implement of husbandry after concluding it was not designed to be used for agricultural purposes. The Court determined there were no modifications to the truck's original design, which was to transport materials on the highways, even though the truck was currently only used in the course of ranch business and never driven on public highways unless to travel from one part of the ranch to another. Although the statutory definition of "implement of husbandry" is a vehicle "designed" for agricultural purposes and exclusively used as such, and does not include the word "original," the Court looked at the truck's original design to determine its current design.

off-road vehicle. These stipulations do not provide any additional relevance to this case because, as each stipulation states, the determination that the vehicle's modifications converted it into a different design "is specific to the facts of this case and does not create a precedent applicable in all cases involving 'feed trucks.'" The District Court agreed, determining that "the design or configuration of the vehicle and its principal use are matters unique to each case . . . ."

¶23 Coleman's claim that he is entitled to an exemption under Admin. R. M. 18.10.110(1) and (2) additionally fails because he was not using his vehicle for the allowed purposes at the time of his citation. The regulations specifically provide that an off-highway or off-road vehicle can occasionally move on the public highways while using dyed fuel "for purposes such as movement between job sites or repair." Admin. R. M. 18.10.110(1). The hearing examiner determined that Coleman's ranch is not all in one location, but rather divided into several sections. Therefore, to get from one portion to another, Coleman occasionally has to use public highways. However, Coleman testified that the day he received his citation he was driving his truck on public highways for the express purpose of going to Charlo to pick up material to transport back to his ranch. This fact was included in the MDOT's findings, STAB's order and the District Court's order. Coleman was not transporting feed or equipment from one part of his ranch to another, nor was he moving the vehicle for purposes of repair. His use of his truck on the public highway does not fit one of the allowed purposes under Admin. R. M. 18.10.110(1) and (2).

## CONCLUSION

¶24    For the reasons stated above, we affirm the District Court's judgment.

Affirmed.

/S/ MICHAEL E WHEAT

We Concur:

/S/ PATRICIA COTTER
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ JIM RICE