**FILED**

02/10/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0462

DA 23-0462

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 15

CITY OF KALISPELL,

      Plaintiff and Appellee,

  v.

SEAN MICHAEL DOMAN,

      Defendant and Appellant,

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DC-23-164
Honorable Robert Allison, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Tammy Hinderman, Appellate Defender Division Administrator, Carolyn Gibadlo (argued), Assistant Appellate Defender, Helena, Montana

      For Appellee:

          Austin Knudsen, Montana Attorney General, Thad Tudor (argued), Assistant Attorney General, Helena, Montana

          Johnna Preble, Kalispell City Attorney, Tyson Parman, Deputy City Attorney, Kalispell, Montana

      For Amici Curiae American Civil Liberties Union of Montana and American Civil Liberties Union Foundation:

          Alex Rate, American Civil Liberties Union of Montana, Missoula, Montana

          Matthew Segal (argued), American Civil Liberties Union Foundation, New York, New York

Argued: October 1, 2025
Submitted: October 7, 2025
Decided: February 10, 2026

Filed:

_____
              Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Sean Doman filmed Kalispell police officers during a traffic stop while he stood on a public sidewalk. Officers arrested Doman for failing to comply with one officer's orders to move down the street away from the stopped vehicle. The City cited Doman for obstructing a peace officer in violation of § 45-7-302, MCA. A Kalispell Municipal Court jury found Doman guilty. On appeal, Doman argues that his conviction is not supported by sufficient evidence and that § 45-7-302(2), MCA, is unconstitutional as applied to the facts of this case. We address the following restated issues on appeal:

1. *Could any rational trier of fact have found beyond a reasonable doubt that Doman knowingly obstructed, impaired, or hindered the enforcement of the criminal law?*

2. *Is Doman entitled to reversal of his conviction for plain error on his claim that § 45-7-302(2), MCA, as applied, violates his free speech rights?*

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 On July 17, 2022, Officer Willey with the Kalispell Police Department observed a driver turn right without using a turn signal. Willey ran a search of the vehicle's license plate and discovered that its registered owner had a suspended driver's license. Willey pulled the driver over for these infractions. After Willey parked behind the vehicle, he observed that its tinted windows prevented him from seeing inside. Willey cautiously approached the vehicle, knocked on the driver's window, stepped back, and asked the driver to stick his hands outside. Once he ensured that the driver did not have any weapons, Willey approached the driver and requested to see his identification. The driver responded that he did not have his identification because he left it at a gas station. Willey then returned

2

to his patrol vehicle to ensure that the driver was the vehicle's registered owner and asked dispatch to check if the driver had any prior convictions for driving with a suspended license.

¶3     While Willey was waiting to hear from dispatch, Sean Doman passed by the traffic stop on his bicycle.  Doman parked his bike on the sidewalk next to the stopped vehicle and started recording the traffic stop with his phone.  Doman moved closer to the vehicle and gestured to its occupants to roll down the window.  Willey noticed Doman and called for backup because he had "someone rolling up filming [him] and the driver's a little . . . sketchy."

¶4     Officer Minaglia quickly responded to the scene.  Minaglia got out of his patrol car and approached Doman.  Doman continued to film while the two had the following exchange:

> Minaglia: "Hey brother, I don't mind if you film . . . just do me a favor and kind of go a little bit a ways, okay?"
>
> Doman: "First Amendment protected activity."
>
> Minaglia: "Right, I agree . . . just do me a favor and get out of where we're working, and you can totally film from like right over here by this tree, okay?"
>
> Doman: "I'm not interfering."
>
> Minaglia: "Okay, I appreciate it."
>
> Doman: "I need to be able to record audio."
>
> Minaglia: "You can, you can record it from right over here."
>
> Doman: "I'd like to stand right here."

3

Minaglia: "Okay, well, you can't."

Doman: "I'm on public property, it's a sidewalk, I'm not interfering."

Minaglia: "You are on public property . . . . Do you understand that my engagement with you is distracting me from this [traffic stop]?"

Doman: "That's your fault, that's not my responsibility."

Minaglia: "Okay, can you please . . . can you please move forward, sir?"

Doman: "No."[1]

¶5 Minaglia pulled Doman's phone out of his hand and set it on the ground. Minaglia reiterated that he didn't mind if Doman filmed, but that he needed to move forward; otherwise, Minaglia would arrest him for obstruction. Doman began swearing at Minaglia and threatened to sue him. Willey heard the situation escalate and got out of his patrol vehicle. Doman again refused to move despite Minaglia's requests, repeatedly asking, "Where?" Doman eventually began to back away from the traffic stop while asking, "How far? How far, tyrant?" At that point, Minaglia told Doman that he was under arrest, and the officers handcuffed him.

¶6 The City cited Doman for obstructing a peace officer in violation of § 45-7-302, MCA. The Kalispell Municipal Court held Doman's trial on March 8, 2023. Officers Willey and Minaglia testified for the City. Doman called Officer Cronin, who had arrived at the scene during the encounter. He testified that he did not interact with Doman or participate in his arrest. The parties presented video footage from the officers' dash

---

[1] We omit only the parts of the conversation where the two interrupted or talked over each other.

4

cameras and body cameras that captured the beginning of the traffic stop and their interactions with Doman. At trial, Doman argued that he was lawfully exercising his constitutional right to record the police and that his activity did not obstruct the officers' ability to conduct the traffic stop. Doman did not move to dismiss the charge on constitutional grounds at any time before or during trial.[2]

¶7 Before closing arguments, the Municipal Court Judge gave Instruction No. 11 that incorporated the statutory language from subsection (2) of § 45-7-302, MCA: "It is no defense to a prosecution under this section that the peace officer was acting in an illegal manner, provided that the peace officer was acting under the peace officer's official authority." The court also instructed the jury that citizens have a First Amendment right to film law enforcement officers during a traffic stop subject to reasonable time, place, and manner restrictions. The jury found Doman guilty, and the court ordered him to pay $538 for his violation.

¶8 Doman appealed his conviction to the Montana Eleventh Judicial District Court. He moved the District Court for an order dismissing the jury's guilty verdict, arguing that § 45-7-302, MCA was "vague, facially overbroad and unconstitutional as-applied to the facts of this case" because it violated the free speech protections of the United States and Montana Constitutions. The City responded that the District Court should not address Doman's constitutional arguments because he failed to raise them in the Municipal Court.

---

[2] At the close of evidence, Doman moved for a directed verdict on the ground that the City failed to prove that Doman obstructed the officers' enforcement of the criminal law because the City failed to prove that a traffic violation constitutes a criminal violation. The court denied Doman's motion.

5

The District Court agreed with the City, affirming Doman's conviction on the ground that he failed to preserve his constitutional challenges for appeal.

## STANDARDS OF REVIEW

¶9 District courts function as intermediate appellate courts when reviewing an appeal from a municipal court. *City of Billings v. Barth*, 2017 MT 56, ¶ 7, 387 Mont. 32, 390 P.3d 951. If a party appeals the district court's decision, "we review the case as if the appeal had originally been filed in this Court, and apply the appropriate standard of review." *Barth*, ¶ 7.

¶10 This Court reviews de novo whether sufficient evidence exists to support a conviction. *State v. Christensen*, 2020 MT 237, ¶ 11, 401 Mont. 247, 472 P.3d 622. Although we will consider an unpreserved facial challenge on appeal, a party generally waives an as-applied constitutional claim not presented to the trial court. *State v. Coleman*, 2018 MT 290, ¶ 8, 393 Mont. 375, 431 P.3d 26; *City of Whitefish v. Curran*, 2023 MT 118, ¶ 29, 412 Mont. 499, 531 P.3d 547.

## DISCUSSION

¶11 *1. Could any rational trier of fact have found beyond a reasonable doubt that Doman knowingly obstructed, impaired, or hindered the enforcement of the criminal law?*

¶12 Section 45-7-302(1), MCA, provides that "[a] person commits the offense of obstructing a peace officer or public servant if the person knowingly obstructs, impairs, or hinders the enforcement of the criminal law, the preservation of the peace, or the performance of a governmental function, including service of process." A person acts knowingly when they "engage in conduct under circumstances that make him or her aware

6

that it is highly probable that such conduct will impede the performance of a peace officer's lawful duty." *City of Kalispell v. Cameron*, 2002 MT 78, ¶ 11, 309 Mont. 248, 46 P.3d 46 (citing §§ 45-2-101(34), 45-7-302(1), MCA). The defendant's subjective intent is immaterial. *State v. Eisenzimer*, 2014 MT 208, ¶ 11, 376 Mont. 157, 330 P.3d 1166. As long as the officer was acting pursuant to their official authority, a defendant may not defend the charges against them on the ground that the officer acted illegally. Section 45-7-302(2), MCA.

¶13 Doman argues that the United States and Montana Constitutions grant citizens the right to publicly film police officers pursuant to their free speech guarantees. As a defense to his conviction, Doman contends that he engaged in constitutionally protected conduct and therefore his conviction cannot stand. Doman also argues that even if his conduct is not absolutely protected, insufficient evidence exists to prove that he knowingly obstructed, impaired, or hindered Willey's ability to issue the driver a citation. The City responds that Doman did not preserve his constitutional arguments and that sufficient evidence exists because Doman posed a safety risk to the officers and diverted Willey's attention away from the traffic stop.

¶14 We generally do not consider issues or claims that the parties failed to preserve for appeal. *State v. Fleming*, 2019 MT 237, ¶ 40, 397 Mont. 345, 449 P.3d 1234. To preserve an issue for appeal, the challenging party must timely raise the issue in the trial court. *State v. Norman*, 2010 MT 253, ¶ 16, 358 Mont. 252, 244 P.3d 737. The plain-error doctrine exists to safeguard individual rights guaranteed by the constitution when the error affects the fairness and integrity to which a defendant is entitled in the judicial process. *State v.*

*Lawrence*, 2016 MT 346, ¶¶ 6, 9, 386 Mont. 86, 385 P.3d 968. When an argument is made for the first time on appeal, "we first determine whether the defendant's fundamental constitutional rights have been implicated." *Lawrence*, ¶ 9. We then consider "whether a failure to review this alleged error might result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the proceedings, or compromise the integrity of the judicial process." *Lawrence*, ¶ 10 (internal quotations and citations omitted).

¶15 Doman argues that the obstruction statute could not constitutionally be applied to him in this case because he was exercising a First Amendment right when he filmed the traffic stop. Doman contends that the officers targeted him for filming and for calling Minaglia a "tyrant." Doman waived his as-applied challenge when he did not raise it in the trial court. *See Curran*, ¶ 29. He argues that plain-error review is appropriate based on his contention—raised for the first time on appeal—that the jury was instructed under an incorrect constitutional framework. The Municipal Court made no express determination regarding whether Minaglia's orders were content-based or content-neutral.

¶16 Because Doman argues that his conviction arose only from constitutionally protected speech, he satisfies the first inquiry in a plain-error analysis. *See, e.g., State v. Yttterdahl*, 222 Mont. 258, 261-62, 721 P.2d 757, 759-60 (1986) (concluding that because the defendant's actions constituted protected speech, she did not commit the offense of disorderly conduct and therefore sufficient evidence did not exist to support her conviction); *City of Houston v. Hill*, 482 U.S. 451, 462-63, 107 S. Ct. 2502, 2510 (1987) ("The Constitution does not allow [protected] speech to be made a crime.").

8

¶17 We are not persuaded, however, that failure to review his constitutional arguments will result in a manifest miscarriage of justice or leave unsettled the fairness of the proceedings against him. No one disputed at trial—and Officer Minaglia did not dispute at the scene—that Doman had a protected right to film the traffic stop. The trial court instructed the jury (Instruction No. 13):

> A citizen's right to film government officials, including law enforcement officers, in the discharge of their duties at a traffic stop is a well-established liberty safeguarded by the First Amendment. It is not a violation of the law to film a peace officer conducting official duties while enforcing the law. However, the right to record police activity, is not without limitations. It may be subject to reasonable time, place, and manner restrictions.[3]

Doman's counsel argued from this instruction during closing that he had a right to film the traffic stop and therefore did not have to obey Minaglia's orders.

¶18 When reviewing a challenge to the sufficiency of the evidence, this Court asks "whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Eisenzimer*, ¶ 5 (quoting *State v. Booth*, 2012 MT 40, ¶ 7, 364 Mont. 190, 272 P.3d 89). In *Eisenzimer*, we concluded that sufficient evidence supported Eisenzimer's conviction for obstruction because he drunkenly approached an officer who

---

[3] Citing *Glik v. Cuniffe*, 655 F.3d 78 (1st Cir. 2011), Doman asked the Municipal Judge to add the following language: "[I]n our society, police officers are expected to endure significant burdens caused by citizens' exercise of their First Amendment rights, and that the First Amendment protects a significant amount of verbal criticism and challenge directed at the police." *See Glik*, 655 F.3d at 84 (citing *Hill*, 482 U.S. at 461, 107 S. Ct. at 2509). The court declined to do so, reasoning that the requested language constituted dicta from *Glik*, and the instruction as written accurately represented the law. Doman did not, as he does on appeal, argue that Instruction No. 13 impermissibly instructed the jury to analyze Officer Minaglia's order—which he claims was a content-based restriction—under the wrong level of constitutional scrutiny.

9

was in the middle of a traffic stop and repeatedly badgered him for a ride home. *Eisenzimer*, ¶¶ 3, 11. Eisenzimer ignored the officer's repeated warnings to "keep walking" or be subject to arrest. *Eisenzimer*, ¶ 11. The officer could not complete the traffic stop until he arrested Eisenzimer. *Eisenzimer*, ¶ 11. We found the evidence sufficient to prove that Eisenzimer knowingly impeded the officer's duties by diverting the officer's attention away from the traffic stop. *Eisenzimer*, ¶ 11.

¶19 In *Cameron*, we reversed the defendant's conviction for obstruction. *Cameron*, ¶¶ 10, 13. There, two officers observed a truck "erratically" pull into a restaurant parking lot and decided to investigate whether the driver was impaired. *Cameron*, ¶ 4. Cameron was a passenger in the vehicle. *Cameron*, ¶ 4. When the men got out of the truck, one officer approached Cameron and directed him to get back inside. *Cameron*, ¶ 5. Cameron refused, and the officer arrested him for obstruction. *Cameron*, ¶ 5. The other officer arrested the driver and testified that Cameron's conduct did not interfere with his duties. *Cameron*, ¶ 6. We concluded that Cameron did not obstruct the investigation because his conduct did not impair the officer's ability to arrest the driver and that Cameron did not act "knowingly" because he did not have a reason to know why the officers were investigating him. *Cameron*, ¶¶ 11, 12.

¶20 Like *Eisenzimer* and unlike *Cameron*, Doman knew that Willey was in the middle of a traffic stop when he arrived on the scene. Doman parked his bike on the sidewalk right next to the stopped vehicle and gestured to the individuals inside to roll down the window. Officer Willey testified that he called for backup because he had an "uneasy feeling about the stop initially," and this unease grew when Doman gestured to the people inside the

10

vehicle. Doman engaged with Minaglia while Willey was in the middle of conducting the traffic stop, and Doman became increasingly aggressive and argumentative as Minaglia ordered him to back away from the scene. Willey said he divided his attention between monitoring Doman and Minaglia's interaction and conducting the traffic stop. Willey got out of his patrol vehicle once he heard Doman and Minaglia's raised voices, and he assisted Minaglia in arresting Doman. Unlike in *Cameron*, Willey testified that Doman's conduct and arrest took his attention "basically completely off of the traffic stop." After the officers placed Doman in custody, Willey issued the driver a citation.

¶21 Doman attempts to distinguish *Eisenzimer*, where the defendant did not engage in any constitutionally protected conduct. Willey testified, however, that he called for backup not because Doman was filming but rather to address safety concerns after Doman attempted to communicate with the vehicle's occupants. Minaglia testified that he arrested Doman because he was uncooperative, he failed to distance himself from the investigation, and he was distracting the officers. The jury received Minaglia's body camera footage as evidence and heard Minaglia repeatedly state that he did not mind if Doman filmed and agree that Doman had a First Amendment right to do so.

¶22 Doman maintains that he did not "knowingly" hinder the officers' investigation because he merely intended to exercise his First Amendment rights. Doman's subjective intent, however, is immaterial. *Eisenzimer*, ¶ 11. Doman asserts that the officers needlessly escalated the situation, and that Doman did not hinder Willey's duties. To support his argument, Doman points to Willey's testimony that he does not necessarily think Doman "hindered [his] ability to issue a citation[,]" which Willey could not do until

11

dispatch responded with the driver's prior convictions. The obstruction statute required proof beyond a reasonable doubt that Doman engaged in conduct under circumstances that made him aware of a high probability that his conduct would impede the officers' duties. *Eisenzimer*, ¶ 11; *Cameron*, ¶ 11.

¶23 Considering that Doman stopped right next to the vehicle, gestured to its occupants, refused to comply with Minaglia's orders despite multiple warnings, and acted combative towards the officers, he has not met his high burden of showing that failure to review his claims would result in a conviction on the basis of purely constitutionally protected activity and therefore would be manifestly unjust. At trial, the jury viewed the officers' camera footage, listened to their testimony, and considered the parties' theories of the case. The evidence supported a finding beyond a reasonable doubt that Doman was aware of a high probability that his conduct would impede the officers' duties.

¶24 Our review is thus confined to determining whether sufficient evidence supports Doman's conviction. The factfinder evaluates witness credibility, assigns weight to the evidence, and determines which version of events prevails. *State v. Burnett*, 2022 MT 10, ¶ 15, 407 Mont. 189, 502 P.3d 703. We do not consider whether the evidence could have supported a different result. *Burnett*, ¶ 15. The jury weighed the evidence presented and credited the City's version of events. We do not disturb the jury's determination on appeal. Viewing the evidence in a light most favorable to the prosecution, we conclude that a rational trier of fact could have found that the City established the essential elements of obstructing a police officer beyond a reasonable doubt.

¶25  *2. Is Doman entitled to reversal of his conviction for plain error on his claim that § 45-7-302(2), MCA, as applied, violates his free speech rights?*

¶26  Section 45-7-302(2), MCA, provides that "[i]t is no defense to a prosecution under this section that the peace officer was acting in an illegal manner, provided that the peace officer was acting under the peace officer's official authority." At trial, the Municipal Court gave the City's proposed Instruction No. 11 that contained subsection (2)'s exact language. Doman did not object to this instruction on the record during the settlement of jury instructions or at any other point during trial.

¶27  Doman first argues that the Municipal Court unconstitutionally applied § 45-7-302(2), MCA, to Doman's prosecution by giving Instruction No. 11. Doman argues that this instruction prevented him from arguing at trial that Minaglia's orders were unlawful, and therefore the jury had no choice but to find him guilty. Doman specifically contends that Minaglia imposed an unreasonable restriction on his activity by ordering him to back up so far that he could not record audio. Alternatively, Doman proposes that subsection (2) applies only when a defendant threatens or uses force or violence. The State opposes Doman's arguments and reiterates that Doman failed to preserve these challenges for appeal.

¶28  Doman did not object to Instruction No. 11 at trial, nor did he propose an instruction that would have directed the jury how to determine whether Minaglia's directive was an unreasonable restriction. During closing arguments, Doman's counsel stated that "[the City] made an issue about, 'it is no defense to a prosecution under this section that the peace officer was acting in an illegal manner.' We aren't saying officers were acting in an

13

illegal manner. We're saying, he didn't obstruct." Finally, we do not identify any place in the record where Doman argued that subsection (2) applies only when the defendant threatens or uses force or violence. Doman has now changed his legal theory. Because Doman failed to timely raise his arguments in the Municipal Court, we conclude that he failed to preserve them for appeal.

¶29 Again, no one disputed that "[t]he right to free speech is a fundamental personal right . . . ." *St. James Healthcare v. Cole*, 2008 MT 44, ¶ 26, 341 Mont. 368, 178 P.3d 696 (quoting *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 503-04, 104 S. Ct. 1949, 1961 (1984)). The first prong of the plain-error test is therefore not at issue. Doman argues that this Court's failure to address his constitutional arguments would result in a manifest miscarriage of justice and compromise the integrity of the judicial system because upholding his conviction would discourage citizens from exercising their First Amendment rights. The State responds that plain error review is inappropriate because the jury received reliable evidence and accurate instructions, and Doman had substantial time and opportunity to raise his constitutional arguments in the Municipal Court.

¶30 We first address Doman's argument that Instruction No. 11 was plain error because it prevented Doman from arguing that Minaglia imposed an unreasonable restriction on his First Amendment activity. Doman alleges that Minaglia ordered Doman to move beyond where he could record audio from the traffic stop, and therefore his order was not "narrowly tailored" and did not "leave open alternative channels for communication." *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293, 104 S. Ct. 3065, 3069 (1984). At trial, jurors viewed Minaglia's body camera footage that captured the following exchange:

14

Doman: "First Amendment protected activity."

Minaglia: "Right, I agree . . . just do me a favor and get out of where we're working, and you can totally film from like right over here by this tree, okay?"

. . .

Doman: "I need to be able to record audio."

Minaglia: "You can, you can record it from right over here."

Minaglia refused at trial to speculate about what Doman could potentially hear but acknowledged that he likely could not have heard the traffic stop if he stood by the tree. Minaglia testified that he picked the tree for Doman to stand by because it "was just a landmark that I had picked out that was easily recognizable, and also put him away from the vehicle . . . ." Jury Instruction No. 13 provided that officers may impose *reasonable* time, place, and manner restrictions on an individual's protected activity. (Emphasis added). In closing arguments, Doman's counsel referenced the above evidence and Jury Instruction No. 13 to argue, "Is it reasonable to tell somebody to go somewhere where they can't actually hear what's going on?"

¶31 The evidence presented at trial, along with Jury Instruction No. 13, allowed Doman's counsel to argue, and the jury to determine, that Minaglia imposed an unreasonable restriction on Doman's ability to film the traffic stop. Instruction No. 11 did not foreclose this argument. We are therefore not convinced that upholding Doman's conviction would result in a manifest miscarriage of justice.

¶32 Finally, we address briefly Doman's argument that § 45-7-302(2), MCA, only applies when a defendant threatens or uses force or violence. We have recognized that "a

15

fundamental aspect of plain error is that the alleged error must indeed be plain." *State v. Taylor*, 2010 MT 94, ¶ 15, 356 Mont. 167, 231 P.3d 79 (citations and quotations omitted). Although this is not a "free-standing requirement outside the two-part [plain-error] test," it informs our analysis in considering whether the standard is satisfied. *Taylor*, ¶ 15. In other words, the alleged error must leave this Court "firmly convinced" that it warrants application of the plain-error doctrine. *Taylor*, ¶ 17 (explaining that the defendant's request to overrule two of this Court's precedents did not constitute plain error).

¶33 Neither the text nor commentary to § 45-7-302, MCA, contains the condition that subsection (2) applies only when the defendant threatens or uses force or violence. The Criminal Law Commission's Comments instead provide that "[t]he commission has followed the basic premise that a person should not take the law into his own hands when faced with illegal police activity." Section 45-7-302, MCA, cmt. This comment demonstrates that subsection (2) is intended to discourage citizens from acting on their own independent view that police activity is illegal. Doman asks us to adopt a new statutory interpretation that is not apparent from the face of the statute. This is not the type of error that plain-error review is intended to address. A defendant may seek dismissal of unfounded charges, and officers who violate a person's constitutional rights may be held accountable by civil legal remedies. *See* 42 U.S.C. § 1983; *Tai Tam, LLC v. Missoula Cnty.*, 2022 MT 229, ¶ 19, 410 Mont. 465, 520 P.3d 312 ("42 U.S.C. § 1983 provides for a cause of action when state actors violate a federally protected constitutional right."). Because we conclude that Doman's unpreserved statutory interpretation argument does not raise a "plain" error, we decline to review and reverse Doman's conviction on this ground.

16

¶34    Doman failed to preserve his as-applied constitutional challenges to § 45-7-302(2), MCA, for appeal.  Although the alleged errors implicate Doman's fundamental right to free speech, he has not convinced us that our failure to address them would result in a manifest miscarriage of justice, call into question the fairness of the proceedings, or compromise the integrity of the judicial system.  We decline to invoke the plain-error doctrine.

**CONCLUSION**

¶35    We conclude that a rational juror could determine that Doman's activity interfered with the traffic stop and that his failure to cooperate with Minaglia's orders obstructed the performance of the officers' duties.  We do not address Doman's as-applied constitutional challenges because he failed to properly preserve his arguments for appeal and has not demonstrated that he is entitled to plain-error review.  We therefore affirm Doman's conviction.

/S/ BETH BAKER

We Concur:

/S/ CORY J. SWANSON
/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ KATHERINE M. BIDEGARAY
/S/ INGRID GUSTAFSON
/S/ JIM RICE

Justice James Jeremiah Shea, concurring.

¶36    I concur fully with the Court's Opinion.  I write separately only to highlight the exchange that occurred between Officer Minaglia and Doman, as set forth in the Court's

17

Opinion. Opinion, ¶¶ 4-5. As the Court accurately notes, nobody disputed Doman's right to film the officers conducting the traffic stop—this included Officer Minaglia, whose first words to Doman upon exiting his car were: "Hey brother, I don't mind if you film . . . just do me a favor and kind of go a little bit a ways." Opinion, ¶ 17. In response to Doman's statement that he was engaging in "First Amendment protected activity," Officer Minaglia stated "Right, I agree." As Doman repeatedly asserted his right to video the traffic stop, Officer Minaglia repeatedly agreed with him, stating: "I agree, just do me a favor and get out of where we're working, and you can totally film from right over here by this tree." Opinion, ¶ 30. It was only after Officer Minaglia's repeated requests that Doman move back from the scene while he recorded the traffic stop that Officer Minaglia arrested Doman for obstructing a peace officer.

¶37 Because Doman failed to preserve his constitutional arguments for appeal, this case ends up being only about whether or not the State presented sufficient evidence at trial to support Doman's conviction of the misdemeanor charge of obstructing a peace officer. Opinion, ¶ 24. That being the case, this Opinion likely will not warrant much, if any, notice from either the public or the press. The pity in that is what will also be lost is an accounting of the professionalism that Officer Minaglia exhibited in this encounter. Regardless of whether you think that Doman was guilty of obstruction or even what you might think of the merits of his constitutional challenges—had they been preserved—you would be hard pressed to view the video of this encounter and conclude that it should have been handled any differently from a public engagement standpoint. This bears noting because we are constantly inundated with images of violent and confrontational encounters between law

18

enforcement and citizens who are attempting to record and document their interactions with law enforcement.  The encounter in this case stands in stark contrast to those images.  But when those are the only images you see, it's easy to think that is how these encounters typically unfold.  Having reviewed the record in countless cases that involved encounters between law enforcement and the public during my tenure on the Court, I would contend that Officer Minaglia's handling of this situation represents the norm rather than the exception, at least here in Montana, and stands as an example of how these encounters can be and are professionally handled.  It is unfortunate that the video of this encounter will likely go the way of the Lost Ark because it doesn't make for good clickbait.

/S/ JAMES JEREMIAH SHEA